## Robert Terrell v. The State.

### No. 3775.   Decided May 27, 1908.

**1.—Murder—Charge of Court—Reasonable Doubt—Intent to Kill—Means Used.**

Where upon trial for murder the evidence showed that the defendant inflicted the wounds with a pocket-knife, by intervening in a difficulty between deceased and defendant's father, and the court in his charge, under article 719, Penal Code, placed the burden of proof and reasonable doubt as to the means used and the intent to kill on the defendant instead of the State, the same was reversible error.

**2.—Same—Charge of Court—Self-Defense—Deadly Weapon—Intent to Kill—Defense of Another.**

Where upon trial for murder defendant's theory was that the deceased was making an assault upon defendant's father, and endangering his life, etc., a charge of the court which submitted the different degrees of homicide and failed to charge on the law of defense of another, and all theory of self-defense, was reversible error.

**3.—Same—Charge of Court—Defense of Another.**

Where upon trial for murder the evidence showed that the defendant intervened in the difficulty between his father and the deceased, who was making a violent attack upon the former, and that defendant cut deceased with a pocket-knife which resulted fatally, the court in his charge on self-defense erred in limiting defendant's right to defend his father, and requiring that he must have resorted to all other means to prevent the injury.    Following Kendall v. State, 8 Texas Crim. App., 569; Horbach v. State, 43 Texas, 242, and other cases.

**4.—Same—Charge of Court—Relative Strength of Parties.**

Where upon trial for murder the evidence showed that the age and physical condition of deceased and defendant's father were known to defendant, and that he intervened in the difficulty between them to defend his father on account of his weak condition as compared to the robust condition of deceased, the court should have submitted this issue to the jury.

Appeal from the District Court of Bowie. Tried below before the Hon. P. A. Turnner.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Hart, Mahaffey & Thomas,* for appellant.—On the question of the court's charge on the means used, etc. Vann v. State, 45 Texas Crim. Rep., 434; Rockhold v. State, 16 Texas Crim. App., 577; White v. State, 23 Texas Crim. App., 154; Henderson v. State, 51 Texas Crim. Rep., 193; 101 S. W. Rep., 245; Morgan v. State, 16 Texas Crim. App., 593. On question of the court's charge on deadly weapon and intent to kill, etc.: Abbata v. State, 51 Texas Crim. Rep., 510; 102 S. W. Rep., 1125; Orman v. State, 22 Texas Crim. App., 604; Morgan v. State, supra; Penal Code, article 719. On question of charge of court submitting burden of proof on defensive matter: Vann v. State, 45 Texas Crim. Rep., 434; Kendall v. State, 8 Texas Crim. App., 569. On question of relative strength of parties: Bond v. State, 23 Texas Crim. App., 180; Bell v. State, 17 Texas Crim. App., 538; Ashworth v. State, 19 Texas Crim. App., 182; Stewart v. State, 15 Texas Crim. App., 598; Lawrence v. State, 10 Texas Crim. App., 495.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was charged with murder and convicted of manslaughter.

Preliminary to discussing the questions involved, a brief statement of the facts may be summed up as follows: The deceased, James Kennedy, and appellant's father, William Terrell, and appellant, a boy about 17 years of age, lived in the same neighborhood, appellant living with his father. Deceased was constable in that particular neighborhood. The evidence is further to the effect that the parties had been friendly. On the day of and preceding the homicide all of the parties had been to the town of DeKalb; they did not go in company with each other, but met while in the town. Deceased and appellant met on the street and there was a friendly greeting between them. While the father of appellant and deceased did not shake hands, they passed greetings, the deceased waving his hand at the father of appellant in a friendly way. Appellant and his father left DeKalb in a wagon and went to the town of Oak Grove, some five or six miles west of DeKalb. Deceased was drinking to some extent under some of the testimony, and was a man of strong physical development, while appellant's father was rather a weakly man, weighing considerably less than deceased, and being some ten to thirteen years older. The testimony shows that he was consumptive. After arriving at the town of Oak Grove appellant and his father hitched their team, got out of their wagon, and separated, appellant going into a store with a little boy, who had been with them

during the day, for the purpose of getting a drink of water for the little fellow. Appellant's father went in the direction of the postoffice. While standing near the postoffice talking to a friend the deceased called him. Appellant's father went to the deceased, who immediately began a violent attack on him, appellant's father retreating and warding off the blows as best he could. Emerging from the store appellant saw the parties in this condition, and immediately went to the rescue of his father, getting a knife from his pocket as he ran. The knife seems to have been an ordinary pocket-knife, the testimony varying somewhat as to its size and length of the blade, from two and one-half to three and one-half inches. Deceased was in the habit of carrying a pistol and sometimes inside of his shirt. The evidence shows that deceased inflicted upon appellant's father rather serious injury, breaking one or more of his ribs by blows from his fist. Appellant testifying in his own behalf states that when he first discovered the trouble between the parties, which was a surprise to him, understanding the size, weight and health of his father and deceased, that he immediately went to the rescue of his father as rapidly as he could. He was examined and cross-examined at considerable length in regard to what he did, and the condition of his mind, and why he acted as he did. The substance of his testimony is to the effect that as he was coming from the store he saw the deceased beating his father, and was not aware of what he was using at the time, whether it was his fist or a weapon, etc. That he immediately ran to his father's protection, and that as he ran in some way or at some time while going to his father's relief, got his knife from his pocket and opened it. Just how and when he was not clear, but he was clear of the fact that he did get it out and open it. He ran up to the scene and began using it on the deceased, and the result shows he inflicted three cuts, and as soon as deceased ceased his attack upon his father he desisted from further striking deceased. One of the wounds proved fatal. Appellant further testifies that deceased carried his pistol sometimes on the outside of his pants, and when in his shirt-sleeves carried it on the inside of his shirt. That deceased also sometimes carried a derringer; that he did not stop to think or consider whether the deceased was armed or not; that his object in getting to where the deceased was assaulting his father was to relieve his father from the attack by the deceased. This, perhaps, without going further into a detailed statement of the facts, is sufficient for a discussion of the legal questions presented.

1. Exception was reserved to the following portion of the court's charge: "Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant cut the deceased with a knife, and thereby killed him, and that said knife was not in its nature calculated to produce death and would not have ordinarily have produced death and that he did not intend to kill deceased, and that he was not justified in so doing on the ground of defending his father, then you will find him guilty of an aggravated assault and battery, and assess his punishment," etc. We are led to believe that the court was undertaking to give in

charge to the jury article 719 of the Penal Code, which reads as follows: "Where a homicide occurs upon the influence of sudden passion, but by the use of means not in their nature calculated to produce death, the person killing is not deemed guilty of the homicide unless it appear that there was an intention to kill, but the party from whose act the death resulted may be prosecuted for and convicted of any grade of assault and battery." It will be noticed that the court's charge begins by placing the reasonable doubt properly; that is, if they should find beyond a reasonable doubt that the defendant cut the deceased with a knife and killed him, but taking the remainder of this portion of the charge, the reasonable doubt seems to have been placed against and not in favor of appellant. Applying the reasonable doubt to the remainder of the charge, it would be made to read this way: Now, if you believe beyond a reasonable doubt that said knife was not in its nature calculated to produce death and would not ordinarily have produced death and that he did not intend to kill deceased, and that he was not justified in so doing on the ground of defending his father, etc. This charge places the burden of proof and the reasonable doubt adversely to appellant. Under this statute, where a homicide occurs under the influence of sudden passion and by means not calculated to produce death, the person killing is not deemed guilty of homicide unless it appear that it was his intention to kill. These provisions of the statute are favorable to appellant in a case of homicide when inflicted by means not ordinarily calculated to produce death, and the charge should be so framed as to inform the jury that the reasonable doubt of these provisions of the law should apply favorably and not adversely to an accused party. Before a party could be convicted of some degree of homicide under this law, where the means used are not ordinarily calculated to produce death, the presumption is expressed by the statute that the person killing shall not be deemed guilty of homicide unless it appear that such was his intention to kill, and, of course, this intention to kill, under this statute, must be shown by the evidence beyond a reasonable doubt. It would seem from this charge of the court that before the jury could acquit appellant of any grade of culpable homicide and find him guilty of an aggravated assault and battery, they were required to believe beyond a reasonable doubt that the knife used by defendant was not in its nature calculated to produce death; that such knife would not ordinarily produce death; that defendant did not intend to kill deceased. We are of opinion that an inspection of this charge indicates that the burden of proof and the reasonable doubt are charged adversely to appellant, whereas the terms of the statute requires they be given favorably.

2. It is assigned as error that the court erred in giving the following charge: "But in this connection I charge you, that if you believe that the instrument by which defendant cut and killed deceased was not in its nature calculated to produce death and would not ordinarily have produced death, but that it evidently appears to you from the manner in which it was used that the defendant intended to kill deceased, then

he would be guilty of murder or manslaughter as you may find from all the evidence in this case and you are to be governed in this by this charge defining murder in the first degree, murder in the second degree, and manslaughter." Quite a number of reasons are assigned why this charge is error. Among these, it is suggested that this charge involves a positive declaration that the defendant would be guilty of murder or manslaughter under the conditions named, omitting from the consideration of the jury and withdrawing from them the theory of self-defense. As this charge is presented, we are of opinion this contention is correct. If the deceased was making an assault upon appellant's father, under the circumstances detailed in the statement of the case in this opinion, and was endangering his life or inflicting serious bodily injury upon him, or it so appeared to appellant at the time he went to the rescue of his father, he would not be guilty of any degree of homicide, but would be justified, and the facts show that the deceased was inflicting serious bodily injury upon the father of appellant during the difficulty in which appellant intervened in behalf of his father. This charge further, in our opinion, had the effect of nullifying and practically withdrawing from the consideration of the jury all theory of self-defense. Appellant may have intended if necessary to kill the deceased in the defense of his father's life, or to prevent serious bodily injury, which he had a legal right to do, yet under this charge this right was eliminated, and the jury were practically required to convict of murder or manslaughter.

3. The court instructed the jury as follows: "I further charge you at the time as a part of the law of self-defense as follows: If you believe from the evidence that the deceased made an unlawful and violent attack on the father of the defendant, but that he did not intend to kill him and that he did not intend to inflict on him serious bodily injury, and that it appeared to defendant that deceased did not intend to inflict serious bodily injury on his father, but that he was making a violent attack on his father, and he cut him with a knife and killed him, while the deceased was in the very act of making such violent attack on his father and that defendant resorted to all other means for the prevention of the injury, then you will find him not guilty." We are of opinion that the question of an unlawful and violent attack which required appellant to resort to other means was not suggested by the testimony in the case from either side. It is a clear limitation of appellant's right to defend his father under the circumstances detailed by the evidence, and we are further of opinion that the charge, even if this phase of the law was called for, went too far in requiring the accused to resort *to all other means* for the prevention of injury. In regard to the latter proposition, construing this statute, the decisions by this court have held that the law only requires the party to resort to all reasonable means at hand for the prevention of such injury. See Kendall v. State, 8 Texas Crim. App., 569; Horbach v. State, 43 Texas, 242; Blake v. State, 3 Texas Crim. App., 581; Ainsworth v. State, 8 Texas Crim. App., 532, and

Williams v. State, 2 Texas Crim. App., 271. We are of opinion that under this state of case the charge with reference to resorting to all other means was not authorized.

4. Exception was reserved to a charge also in regard to failing to instruct the jury with reference to the fact that they might take into consideration all the evidence in regard to appellant's knowledge of the relative strength of the parties, and the defendant's knowledge of the habits of deceased in reference to going armed, etc. We believe under the facts a charge presenting this phase of the case should have been given. This is not a case where deadly weapons were being used by shooting or any dangerous weapon for the purpose of killing, but it was a difficulty in which age and physical conditions of the deceased and appellant's father were known to him (appellant) and which are shown to have been known to him by the facts adduced on the trial, and his knowledge of the fact that deceased went armed.

For the errors indicated, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*