## WALTER CUKIERSKI V. STATE.

No. 2226. Decided January 15, 1913.

Rehearing denied February 12, 1913.

**1.—Murder—Charge of Court—Simple Assault.**

Where, upon trial of murder, the court charged the two degrees of murder, manslaughter, assault to murder, and aggravated assault, the jury finding the defendant guilty of manslaughter, and there was no evidence even from defendant's own testimony raising the issue of simple assault, there was no error in the court's failure to charge thereon.

**2.—Same—Charge of Court—Murder in the First Degree—Manslaughter.**

Where the defendant was convicted of manslaughter, objections to the court's charge on murder in the first degree need not be considered.

**3.—Same—Charge of Court—Weight of Evidence.**

Where the charge of the court did not assume that the defendant acted either alone or as principal with another in the commission of an unlawful homicide, an objection that the charge of the court assumed to do so, when taken as a whole, is untenable.

**4.—Same—Assault to Murder—Charge of Court.**

Where, upon trial of murder, the evidence raised the issue of assault to murder, the court properly charged thereon as well as aggravated assault.

**5.—Same—Declarations of Third Parties.**

Where the declarations of third parties were improperly admitted and afterwards withdrawn by the court, and were not of that hurtful nature as would call for a reversal of the case, there was no error.

**6.—Same—Evidence—Written Confessions.**

Where the written confessions of the defendant in every way complied with the law, they were properly admitted in evidence. Following Henzen v. State, 62 Tex. Crim. Rep., 336, 137 S. W. Rep., 1141.

Appeal from the District Court of Erath. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*L. N. Frank* and *B. E. Cook,* for appellant. On question of insufficiency of the evidence: Davis v. State, 2 Texas Crim. App., 588; Cohen v. State, 11, id, 622; Powell v. State, 15 id, 441; Phillips v. State, 17 id, 169.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—This is a companion case to that of Frank Wisnoski, decided at this term, and the evidence for the State is in the main the same, except the evidence went into more detail as to the part taken by this appellant in the difficulty. Zeilinski testified in this case:

"I saw defendant have a knife in his hands at the time the fight

started, and he also had his knife in his hands at the time he was striking the deceased and when they were fighting. I could see the open knife in the hands of defendant at the time he was fighting and striking the deceased. I knew the knife, and can here now identify the knife exhibited as that of the defendant, and as the one he had open in his hands at the time of the fight, and as the same knife he was striking at deceased with during the time of the fight. The blade of the knife was open in the hands of defendant just as it is now. I had seen the defendant with the knife before this time pretty often. I was on the other side of deceased before he fell to the ground and did not see any blood on his shoulder, and did not see any cut on his face or head. I was not in position to have seen it. I did, however, see defendant strike at deceased with this same knife, here exhibited, before deceased fell to the ground, and after deceased had fallen to the ground I saw defendant kicking him about his back and 'bottom' parts. Deceased at the time he was being kicked was holding his hands over his head, and was lying on his side. The only thing I heard deceased say to defendant was, 'What are you beating me for?' At this time Frank Beta came up to defendant and told him to let deceased alone and not kick him any more, and defendant then stepped back a little and stood there. When defendant had stopping kicking deceased and had stepped back a little from him, Frank Wisnoski came up to deceased, and told him to get up, and then raised deceased up and stuck his dirk in his breast. I here identify the dirk knife used by Wisnoski in stabbing deceased. I was standing right near deceased's head at the time of the stabbing by Wisnoski and could see the knife. Wisnoski caught hold of deceased and raised him up from the ground and stuck the knife in him and then threw him down on the ground again, and then said: 'He needs a doctor.' When Wisnoski threw deceased back on the ground, the blood from the wound on deceased flew over on my pants. I was not watching defendant just as this happened, but he was standing back just a little from deceased. I heard nothing said between Wisnoski and defendant at this time, but defendant was talking; there was a 'right smart' racket going on at the time and I could not state what was said by defendant to Wisnoski.''

The defendant testified: ''When I heard the bicycle pop we all stepped from the porch out to where the bicycle was standing—that is Frank Wisnoski, Tom Mulkowski, myself and some others. Out there we found Big Joe, Joe Schmidt and John Czerwinski, (the deceased). I did not say anything immediate after I got there, as Frank Wisnoski had come out and jumped on Big Joe and asked who had cut the bicycle and what it was cut for, and then I spoke and said I see who cut it—that it was John Czerwinski, and I then asked deceased what he had cut the wheel for, and he replied that he had cut it because he wanted to. Deceased at this time had his knife in his hand, opened, and I took the knife in my hand and examined it,

all of us standing there around the bicycle. Frank Wisnoski had got the knife from deceased, and then handed it over to me; I examined it and handed it over to Frank Beta. I then told deceased he had to pay me for my bicycle. He then had his knife open in his hand and said to me that he would pay me with that. At this I got scared a little and didn't say anything more. At this time Frank Beta got hold of deceased and began shoving him away from the crowd—this after I had given deceased's knife over to Frank Beta. After Beta had shoved deceased off some little distance John Zeilinski, who had been standing there by the bicycle with a knife in his hand (I could see the end of it' in his hand), started on after Beta and the deceased, and took deceased away from Beta and turned him around. I then ran up to see what he was doing, and to see who it was beating the deceased, or to see whether John Zeilinski was beating him or not, and when I got there I helped John Zeilinski beat the deceased. Frank Wisnoski at this time was still at the bicycle and was quarreling with Big Joe.

"Frank Beta carried deceased about forty feet from the crowd, pushing him along; as he was doing so John Zeilinski started after them while I was still at the bicycle, and after Zeilinski had got up to deceased and jumped on him, I also went up and helped Zeilinski, and wanted to see if he was beating him. Zeilinski had hit deceased a couple of times, and I also hit him a couple of times and knocked him down. This was when he was being shoved or pushed back away from Frank Beta, and after Frank Beta had turned him loose and had stepped away from him. Zeilinski got deceased loose from Frank Beta and was hitting him and shoving him back towards the way he had come with Beta when I came up to them and hit deceased a couple of licks and finally knocked him down and then kicked him. I also kicked him before I knocked him down. During this time, and before I had hit deceased John Zeilinski had out his knife and had cut deceased with the knife on top of the head, and then cut him on the arm, or shoulder. I did not see the blade of the knife at this time, but I saw that Zeilinski had the knife in his hand. Deceased fell right at the place where Zeilinski had hit him with the knife, and where I was when I hit him with my hand. I kicked the deceased after he was down on the ground. As deceased fell to the ground he looked to me like he was trying to get up and then it was that I kicked him. He seemed to be trying to get up and I kicked him at that time, and after Zeilinski had hit him with the knife. * * *

Deceased fell sorter on his back, and towards the house of Andrew Caczor, or facing the Caczor house, and after he fell he got his arm over his head, and seemed to be trying to get up again. I saw Frank Wisnoski when he came up to where deceased was lying on the ground, but do not remember to have seen anyone come up with him. I was in plain view of Wisnoski when he came up to deceased, and saw him when he raised deceased up from the ground with his left

hand. I saw the knife Wisnoski had in his right hand, and could plainly see his right hand and his right arm as he raised deceased with his left hand, but I did not see the knife as he stooped to take hold of deceased and did not see the knife as he raised deceased up from the ground. After Wisnoski stooped down and got hold of deceased I didn't see the knife in his hand any more, as I was on the other side of him from deceased. Wisnoski just picked deceased up from the ground, raised him up and then turned him loose and he fell to the ground again—it seemed to me not more than a second of time in doing so. When deceased fell back to the ground Wisnoski then said, 'He needs a doctor now,' and Wisnoski then went away from deceased and got on his wheel and went after a doctor.''

Appellant Cukierski's knife was found on the ground near the scene of the difficulty, by the officers and on the day after the killing, appellant made the following statement: ''Walter Cukierski being duly sworn testified as follows: I have been warned by L. O. Cox, to whom this statement is made that I do not have to make any statement that will in any way incriminate me and that I do not have to make a statement about who killed John Czerwinski last night, and that if I do make such statement it can and will be used in evidence against me upon a trial for killing said party and not for me, and make this statement voluntarily of my own accord: ''My name is Walter Cukierski. I was seventeen years old six months ago; I was at Jake Sabota's house last night. Somebody stuck a knife in my bicycle tire. I asked John Czerwinski what he did it for and he said just because he wanted to. I told him I had some witnesses and he would have to pay me for it. Frank Wisnoski said to John, what did you do it for, you dirty son of a bitch, and John replied just because I wanted to, and said, 'who are you calling a son of a bitch?' Frank said to John, 'I am calling you a son of a bitch.' John then made a break to get to Frank. Frank had a dirk in his hand and said to John, 'If you want anything you'll get it right here.' Frank had his hands folded and had the dirk in his right hand. About this time John Zeilinski jumped on John and struck him and several others surrounded him. Some were trying to stop the trouble, and others were trying to engage in it. John had a knife open in his hand; he tried to defend himself, but I never saw him try to cut anybody with it. I never saw John's knife any more after the fight started. Frank Beta started to take John off before John Zeilinski jumped on him, and carried him five or six steps, and John was trying to get away from him. He got loose from Frank Beta and John Zeilinski and Tom Mulkowski jumped on John Czerwinski. John Zeilinski struck him; I was trying to hit him but couldn't get to him. Frank Wisnoski was mixed up in the fight; I could not see what was doing; there was no one else besides myself, John Zeilinski, Frank Wisnoski and Tom Mulkowski trying to fight John Czerwinski. The knife showed to me here is my knife. I did not have it during the fight. It was with

my tools in the bicycle. I do not know how it came to be out in the
street where it was found. The knife with the corkscrew attachment
is Frank Wisnoski's; I don't know whose the other knife is. We all
got in after him when he backed down the street east. It seemed as
if he would make a getaway and we were after him. John Zeilinski
struck John just before he fell; struck him with both hands, but I
don't know what he hit him with or where he struck him. We were
all right in a bunch and I could not tell what each one was doing.
Frank Wisnoski was right there when he fell, about five steps away.
He had his dirk in his hand; he walked up to where John was lying
on his side, took hold of him and said don't sull; he raised him up
and then laid him back down and said he's got enough. He said
he's dead; I'll go and get a doctor. Frank Wisnoski still had his
dirk in his right hand when he raised him up. This was a cross-
handled two-edged 'stiletto.' I had seen him with this stiletto two
or three weeks ago at his own house.         (Signed) W. Cukierski.''

The court charged on murder in the first degree and second degree,
manslaughter, assault to murder and aggravated assault, the jury
finding this defendant guilty of manslaughter. Appellant insists that
the court should also have charged the jury the law of simple assault.
Take this appellant's own testimony, and he makes himself a principal
with Zeilinski and if Zeilinski was doing the acts appellant states he
was doing, Zeilinski would be guilty of a higher grade of offense than
simple assault, and as he admits he joined in with him, the offense
of appellant, even though he only used his hands and feet as claimed
by him, would be guilty of at least aggravated assault.

We do not deem it necessary to discuss those bills of exception com-
plaining of the charge of the court insofar as they relate to the
charge of murder in either degree, as appellant was adjudged guilty
of only manslaughter, and such error, if error there be, could not
have influenced the finding of the jury.

The court charged the jury: "Now, if you believe from the evi-
dence in this case, beyond a reasonable doubt that the defendant,
Walter Cukierski, in the County of Erath and State of Texas, on or
about the 26th day of May, 1912, in a sudden transport of passion
aroused by an adequate cause, as the same is hereinbefore defined,
either alone, or acting with Frank Wisnoski, under such circumstances
as to constitute him a principal, as that term is herein above defined,
with intent to kill, did unlawfully cut and stab John Czerwinski, and
thereby kill him, then you will find the defendant guilty of man-
slaughter, and assess his punishment at confinement in the peniten-
tiary for not less than two nor more than five years, in your dis-
cretion.. * * * Now, if you believe from the evidence in this case,
gentlemen, that Frank Wisnoski inflicted the wound on the deceased
with a knife, which produced his death, and if you should have a
reasonable doubt as to whether or not the defendant acted with the

said Frank Wisnoski under such circumstances as to constitute him a principal, as that term is hereinbefore defined, then you are instructed that the defendant would not be responsible for the acts of the said Frank Wisnoski in killing the deceased." This charge is not subject to the criticism that it "assumes that the defendant acted either alone or as principle with Wisnoski in the commission of an unlawful homicide." In the charge the jury is required to find, beyond a reasonable doubt, that defendant did an unlawful act and tells them if they have a reasonable doubt he would not be guilty. The court in his charge had properly defined who are principals in the commission of an offense, and the charge taken as a whole is not subject to the criticism leveled at it in this bill of exception.

The fact that the court charged the jury on assault to murder would not be injurious to appellant. It was only in the event that the jury should find, or have a reasonable doubt of the fact, that he acted with Wisnoski in killing the deceased, were they authorized to consider whether or not he was guilty of an assault to murder, or aggravated assault in acting with Zeilinski. It seems the jury found that he had acted with Wisnoski in a way to make him a principal in taking the life of deceased and the fact that the court charged on these lesser degrees would not be injurious to defendant. There is no complaint that the charges on assault to murder or aggravated assault, do not properly submit these issues, but the complaint is that these issues were not in the case. If deceased was not acting with Wisnoski, as contended by him, he certainly was acting with Zeilinski as testified to by him, and his conduct as testified to by him, if Zeilinski did what appellant says, would render appellant guilty of either assault to murder or aggravated assault. Consequently the court did not err in submitting these issues to the jury. Under appellant's confession the jury would be authorized to find that he was acting with Wisnoski; under his testimony on this trial, he would deny that he and Wisnoski were acting together, but he admits acting with Zeilinski and the court acted properly in submitting all these theories to the jury. The evidence would disclose that Wisnoski killed deceased, and if appellant was not acting with him, yet he says he joined in with Zeilinski, and the acts of Zeilinski as testified to by appellant would render him guilty of assault to murder or aggravated assault.

The conversation of Frank Wisnoski with Frank Wenick in the afternoon was not admissible against appellant, and the court should not have admitted it. However, the court orally withdrew the testimony from the jury and then in his charge instructed them: "I withdrew from your consideration, gentlemen, the evidence of Frank Wenick to the effect that about five o'clock in the evening, prior to the homicide that night, he, the said Frank Wenick had a conversation with Frank Wisnoski, and that said Frank Wisnoski stated to him in said conversation; and I also withdrew from your consideration

any act of Frank Wisnoski in exhibiting the dirk knife, if any, to the said Frank Wenick at said time. You will not consider these declarations and acts of the said Frank Wisnoski for any purpose. They are not evidence of the defendant's guilt and cannot be so considered by you.'' Under such circumstances the testimony is not of that hurtful nature as would call for a reversal of the case, as it was withdrawn from, and the jury instructed not to consider it.

The statement of defendant made to the county attorney, the day after the homicide, was properly admitted in evidence. It complies in every way with the requirements of this court as announced in Henzen v. The State, 62 Texas Crim. Rep., 336; 137 S. W. Rep., 1141, and the court in his charge properly instructed the jury not to consider it if it was not freely and voluntarily made.

The judgment is affirmed. *Affirmed.*

[Rehearing denied, February 12, 1913.—Reporter.]