### T. L. Neyland v. The State.

No. 4079.   Decided May 17, 1916.

Rehearing denied June 14, 1916.

**1.—Murder—Sufficiency of the Evidence—Instrument Used.**

Where, upon trial of murder, the evidence sustained the conviction and substantially proved the means used as alleged in the indictment, there was no reversible error. Following Chisolm v. State, 179 S. W. Rep., 103.

**2.—Same—Murder—Manslaughter—Charge of Court.**

Where, upon trial of murder, defendant was convicted of manslaughter, an objection to the charge of the court on murder need not be considered on appeal. Following Dougherty v. State, 59 Texas Crim. Rep., 464, and other cases.

**3.—Same—Charge of Court—Adequate Cause—Insult to Female Relative.**

Where defendant was convicted of manslaughter with the lowest punishment assessed, any error in the charge on manslaughter passes out of the case; however, the court instructed on insults to female relative. Following Munos v. State, 58 Texas Crim. Rep., 147.

**4.—Same—Charge of Court—Self-defense—Converse Proposition.**

Where, upon trial of murder, the court properly charged on self-defense and the converse proposition thereof and did not limit the right of self-defense, but simply also submitted the State's theory, there was no reversible error. Following Logan v. State, 46 Texas Crim. Rep., 573, and other cases.

**5.—Same—Rule Stated—Self-defense—State's Theory—Charge of Court.**

All self-defense rests upon necessity; when there is no necessity it can not be self-defense, and there is no just ground for complaint that the State's theory is affirmatively submitted in the court's charge.

**6.—Same—Self-defense—Sanctity of Home—Charge of Court—Self-defense.**

The law knows no reasonable rule or regulation for the protection of a public bawdy house, and defendant's claim that he had a right to eject deceased from such a house did not raise the issue of defending the sanctity of the home; the court's charge on self-defense fully covering every right defendant had.

**7.—Same—Requested Charges.**

Where defendant's requested charges authorized an acquittal on a state of facts which would not justify one, and others were covered by the general charge, there was no error in refusing them.

**8.—Same—Reputation of Deceased—Specific Acts of Violence—Evidence— Details Not Admissible, When.**

Where, upon trial of murder, defendant was permitted to testify to all he knew about deceased being a violent man, etc., and also as to what he had heard as to specific acts of violence of deceased towards others, and also to introduce testimony by his witnesses as to the character of deceased, there was no error in the court's excluding the details of certain specific acts of violence committed by the deceased on others than appellant; besides the bill of exceptions failed to show that defendant knew of these extraneous acts prior to the homicide. · Following Willis v. State, 49 Texas Crim. Rep., 139, and other cases.

**9.—Same—Remarks by Court—Absence of Jury—Practice.**

Where the remarks by the court, as to his reasons for ruling on testimony as to the bad, general reputation for violence of deceased, were made in the absence of the jury, there was no reversible error.

**10.—Same—Bill of Exceptions—Rule Stated.**

It is well settled that a bill of exceptions taken to the exclusion of evidence must disclose the relevancy thereof, and the court can not look to the statement of facts or indulge in inferences. Following Conger v. State, 63 Texas Crim. Rep., 312, and other cases. Distinguishing Smith v. State, 148 S. W. Rep., 699.

**11.—Same—Opinion of Witness—Evidence—Means Used—Wounds.**

Where the evidence showed that the deceased was killed with a dirk or two-edged instrument, there was no error in permitting the witness to testify that he saw defendant strike deceased in the breast and saw the blood on his shirt, etc., and without objection to answer further that the wound was about an inch wide made by a dirk knife. Following Steagald v. State, 24 Texas Crim. App., 207.

**12.—Same—Evidence—Suspended Sentence—Bill of Exceptions.**

Where defendant had asked for a suspended sentence, and the evidence showed that defendant's wife was the keeper of a house of prostitution, there was no error in admitting testimony that defendant was living in said house of prostitution; besides the bill of exceptions was defective.

**13.—Same—Evidence—Credibility of Witness—Vagrancy.**

There was no error in the court's ruling in refusing to permit defendant to prove by the State's witness on cross-examination that he had been arrested for vagrancy as a matter of impeachment. Following Ellis v. State, 56 Texas Crim. Rep., 14.

**14.—Same—Evidence—Husband and Wife—Cross-examination.**

Upon trial of murder, where the defendant introduced his wife as a witness and the State was permitted to cross-examine her in a legitimate way, there was no error; besides the bill of exceptions was defective.

**15.—Same—Credibility of Witness—Suspended Sentence.**

.   Where defendant asked for a suspended sentence in case of conviction, there was no error in admitting testimony that defendant had the reputation of being kept up by sporting women and being a pimp; besides the bill of exceptions was defective, and the testimony was properly limited.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Heidingsfelders,* for appellant.—On question of general reputation of deceased: Patterson v. State, 56 S. W. Rep., 59, and cases cited in the opinion.

On question of refusing special charges: Chambers v. State, 79 S. W. Rep., 572; Parnell v. State, 98 S. W. Rep., 269; Yantis v. State, 94 S. W. Rep., 1019; Holcomb v. State, 113 S. W. Rep., 754.

On question of moral turpitude: Johnson v. State, 148 S. W. Rep., 328; Young v. State, 127 S. W. Rep., 1058; Marsh v. State, 112 S. W. Rep., 320.

On question of defendant's general reputation: Kirk v. State, 32 S. W. Rep., 1045.

*C. C. McDonald,* Assistant Attorney General, *John H. Crooker, T. J. Harris,* and *E. T. Branch,* for the State.—Cited cases in opinion.

HARPER, JUDGE.—Under an indictment charging him with the murder of Tom Gardner by cutting and stabbing him with a knife and with some sharp instrument, the name and description of which was unknown to the grand jury, appellant was convicted of manslaughter, and his punishment assessed at the minimum term of two years; and from the judgment thereon he has appealed, and his case has been so thoroughly digested, and the issues raised disposed of in the brief filed in behalf of the State by Messrs. C. C. McDonald, Assistant Attorney General, John H. Crooker, criminal district attorney, T. J. Harris and E. T. Branch, we have concluded to adopt it, in the main, as the opinion, omitting such parts as we do not deem necessary to a proper disposition of the case:

"1. Appellant admitted on the trial that he stabbed deceased, claiming that it was done with a spring-back knife in self-defense while deceased had him down and was choking him and trying to open a knife. The State's testimony shows that deceased was stabbed to the heart with a dirk or sharp two-edged instrument while he was unarmed. According to the testimony for the State, appellant's wife was running a public bawdy house in the restricted district of the City of Houston, known as the 'reservation,' and when deceased entered the house with some companions she sought to order them away, using very vile and vulgar language, and struck deceased, when appellant rushed out of a room there and attacked deceased, and in a short time deceased was stabbed fatally, dying in a few minutes. Appellant testified to an assault on his wife and himself; that deceased attempted to cut him with a knife, and he thought his life was in danger. The State's case amply supports the verdict, and the conflict in the testimony was settled by the jury in favor of the State, and that finding was approved by the trial judge. We think it unnecessary to make a detailed state-

ment of the testimony, since in briefing the contentions of appellant we
call the attention to whatever testimony we think bears on the point
involved. From the description of the wound and the other circum-
stances of the case, it is almost evident that deceased was stabbed to
death with a dirk. This would sustain the allegations of the indict-
ment as to the means, since in proving means only the substance of
the issue need be proven. Chisolm v. State, 77 Texas Crim. Rep.,
397, 179 S. W. Rep., 103.

"2. Appellant contends that the court erred in charging on murder,
but it is unnecessary to determine whether or not the issue of murder
was in the case since appellant was convicted of manslaughter and
received the lowest term for that grade of homicide, and any error in
charging on murder or any errors in the charge on murder pass out
of the case since in no way did such error, if any, prejudice the other
issues in the case. Dougherty v. State, 59 Texas Crim. Rep., 464,
128 S. W. Rep., 398; Cukierski v. State, 68 Texas Crim. Rep., 367,
153 S. W. Rep., 313; Condron v. State, 69 Texas Crim. Rep., 513,
155 S. W. Rep., 253.

"3. Appellant also excepted to the court's charge because it did
not state as a matter of law that insults to a female relative would as
a matter of law be adequate cause. An inspection of the charge shows
that the court did so charge the jury, probably in response to such
exception, and as appellant was convicted of manslaughter with the
minimum punishment assessed, any errors, if any, in charging on man-
slaughter would pass out of the case since there is no error pointed out
which could have tended to bring about a conviction. Munos v. State,
58 Texas Crim. Rep., 147, 124 S. W. Rep., 941.

"4. Appellant's third exception to the court's charge complains that
the charge 'too prominently calls the jury's attention to the fact what
the defendant's rights were and erroneously states the converse thereof,
thereby calling the jury's special attention to that feature of the charge
which is set out in the last paragraph on self-defense.' Any error of
the court in too prominently stating what the rights of appellant were
would be in his favor. The charge on self-defense was liberal to ap-
pellant, but of this he will not be heard to complain  As to the 'con-
verse' of his rights the court charged the jury:

" 'If, however, you find from the evidence, after viewing the facts
from the defendant's standpoint at the time of the homicide, that it
did not reasonably appear to defendant that he or his wife was in
danger of losing his or her life nor of suffering serious bodily injury
at the hands of deceased, then and there at the time he cut the de-
ceased, if you find he did cut him, then if you should so find you will
find against his plea of self-defense.'

"This charge is *almost identical* with the charge in the case of
Logan v. State, 46 Texas Crim. Rep., 573, 81 S. W. Rep., 721, and
the charge is not a 'limitation' on the theory of self-defense, but is
simply submitting the State's theory of self-defense. In section 1942

of Branch's Annotated Penal Code, the proposition is laid down that the charge of the court may submit the State's theory of the claim of self-defense, citing Humphries v. State, 25 Texas Crim. App., 126, 7 S. W. Rep., 663; Garner v. State, 34 Texas Crim. Rep., 356, 30 S. W. Rep., 782; Logan v. State, 46 Texas Crim. Rep., 573, 81 S. W. Rep., 721; Howard v. State, 53 Texas Crim. Rep., 378, 111 S. W. Rep., 1038; Arnwine v. State, 54 Texas Crim. Rep., 213, 114 S. W. Rep., 796; Bordeaux v. State, 58 Texas Crim. Rep., 61, 124 S. W. Rep., 640; Roberts v. State, 69 Texas Crim. Rep., 297, 158 S. W. Rep., 110.

"In Howard v. State, supra, the court uses the following language, which is again referred to and approved in Bordeaux v. State, supra:

" 'Counsel for appellant sometimes overlook the fact that it is just as necessary and as much required of the court to submit to the jury issues raised by the State's evidence, and on which, under the law, a conviction could be had and ought to be had, as it is to submit matters wholly defensive.'

"In the case at bar, appellant claimed that deceased was choking him and was trying to open a knife with his teeth when appellant stabbed him, while in fact no knife of deceased was found and many witnesses testify that deceased had no knife. The court fully charged on appellant's theory of self-defense and was authorized to submit the State's theory thereof. The right of self-defense is founded on the law of nature, and is not, nor can be, superseded by any law of society. Instinct teaches it to wild beasts, custom to all nations, and reason to enlightened people. All self-defense rests upon necessity; when there is no necessity to kill, it can not be self-defense. At common law one attacked was compelled to retreat to the wall before being entitled to defend himself, but our statutes do not require one assailed to retreat in order to avoid the necessity of killing his assailant. Our laws were made in the interest of brave and law-abiding citizens, and for the protection and cultivation of true manhood, but the right of self-defense was never intended to be used as a cloak for the assassin or as a shield for one who would use unnecessary violence or excessive force. When the assault or threatened injury to another does not amount to enough to create a reasonable apprehension or fear of death or serious bodily injury then all means reasonably proper and effective should be first invoked before resorting to a right which, under the most favorable aspect of any case, must be deemed lamentable in its exercise. Our laws demand and require an affirmative presentation of any defensive theory though it be impliedly included in the presentation of the State's theory, and even though it is impossible to find in favor of the State's theory without finding against the defensive testimony, and there is in reason and on principle no good nor just ground for complaint that the State's theory of a proposition is affirmatively given when in juxtaposition therewith and untrammelled thereby, the defensive theory is also affirmatively submitted.

"5    Appellant contends that the court erred in not charging on the theory that appellant had a right to eject deceased from the house of himself and wife, and that if in so doing he killed him he would not be guilty.    The testimony raised no such issue.    The court's charge on self-defense covered fully every right appellant had in the premises, and the law knows no reasonable rules or regulations for the protection of a public bawdy house situated in the reservation and where prostitution is openly conducted in violation of law.    What is said in Pierce v. State, 21 Texas Crim. App., 540, 1 S. W. Rep., 463, where the same right was contended as to a gambling room is applicable here. The court in no way limited appellant's right of self-defense by referring to appellant's being in such a house, and gave him the perfect right of self-defense on every possible phase of the case.    There is a manifest difference between the sanctity of a home and the purlieus of crime as evidenced by a public house of prostitution, where the general public is invited to visit.

"6.    Bills of exception numbers one to six, inclusive, complain of the refusal of the court to give certain requested instructions.    It is unnecessary to set them out.    Some, if not all, are incorrect as a matter of law, since they authorize an acquittal on a state of facts which would not justify the homicide, and such as suggest any defensive theory are covered by the general charge, and what has already been said is applicable to these requested charges.

"7.    The seventh bill of exceptions presents what we think the only serious question on this appeal, but we think a careful review of the real situation will disclose that the court was correct in excluding the *details* of the specific acts of violence committed by deceased on others than appellant, although he may not have assigned the correct reason for the ruling.    Every case must necessarily depend on its own environments, and we think it proper to discuss both the correctness of the ruling and the effect thereof.    The two remarks of the court quoted in the bill show such disconnection as that it is obvious that the court sought more light after his first remark and before his final ruling.

"It must first be noted that what the court remarked as to his reasons for his ruling was said *in the absence* of the jury, and therefore could have in no way affected the testimony already and afterwards introduced by appellant as to the bad general reputation for violence of deceased, nor have affected the jury.    Appellant was permitted to at length testify to all he knew about deceased and to testify to all that he had heard as to specific and isolated acts of violence of deceased towards others.    It will also be seen from the statement of facts that the State did not, either by cross-examination or by offering testimony, attempt to dispute any of the testimony offered by appellant and his witnesses as to the character of deceased.    The bill of exceptions itself *fails* to show that appellant knew of these extraneous acts prior to the homicide, or that he had ever heard of them.    The first paragraph of section 2094, Branch's Annotated Penal Code, reads as follows:

" 'Proof of specific acts of violence on the part of deceased is not admissible if there is no evidence that defendant knew of these matters prior to the homicide. Patterson v. State, 56 S. W. Rep., 59; Willis v. State, 49 Texas Crim. Rep., 139, 90 S. W. Rep., 1100; Lubbock v. State, 66 Texas Crim. Rep., 309, 148 S. W. Rep., 258; Smith v. State, 70 Texas Crim. Rep., 68, 156 S. W. Rep., 214; Wilson v. State, 70 Texas Crim. Rep., 631, 158 S. W. Rep., 512; Harper v. State, 75 Texas Crim. Rep., 124, 170 S. W. Rep., 721; Echols v. State, 75 Texas Crim. Rep., 369, 170 S. W. Rep., 786.'

"It is well settled that a bill of exceptions taken to the exclusion of evidence should disclose the relevancy and materiality of the proposed evidence, and that inferences will not be indulged to supply the omission of such essentials. Branch's Annotated Penal Code, sec. 212. *This court is not required to and will not look to the statement of facts in aid of a bill of this character.* Conger v. State, 63 Texas Crim. Rep., 312, 140 S. W. Rep., 1112; Banks v. State, 62 Texas Crim. Rep., 552, 138 S. W. Rep., 406; .Golden v. State, 66 Texas Crim. Rep., 262, 146 S. W. Rep., 945; Harris v. State, 67 Texas Crim. Rep., 251, 148 S. W. Rep., 1074.

"The case of Smith v. State, 148 S. W. Rep., 699, was reversed because the accused was not permitted to prove by himself that he knew of his personal knowledge and from hearsay of several unlawful attacks made by deceased on others, even though he had already proven the general reputation of deceased; in the case at bar appellant was permitted, and without objection, did prove all that he desired in regard to the reputation of deceased, and did himself testify, without objection, to all he knew, either from hearsay or from personal knowledge, about any specific or isolated act of violence committed by deceased. The bill of exceptions shows that appellant went into detail in regard to these specific acts, and that he testified fully in regard thereto. We quote from the bill:

" 'The defendant having testified to his knowledge by hearsay and by actual personal knowledge of facts which are as follows: that he had heard of a violent assault on the part of deceased, Tom Gardner, herein, on a negro, in the presence of Sam Bateria, said assault being without any cause or provocation whatsoever, and that in said assault the deceased threw two or three bottles of beer at the negro and at the time of said occurrence many people were in Bateria's store. That he also had heard that the deceased had assaulted one George Walker, without any cause or provocation whatever a short time prior to the date of the homicide, and that the deceased drew a knife on George Walker and attempted to cut him, and that the deceased followed the said George Walker several blocks and went into different places, and the said George Walker went into one place and the deceased attempted to cut him, as well as cut George Walker's brother, but that he was prevented from so doing by one Harry Arnold, who lived in Houston Heights. He further testified that he knew of a violent assault made

by the deceased on one Charlie Danna, without any cause or provocation, which took place some few months prior to the homicide. And that he had heard that the deceased had beat and struck the said Charlie Dana over the head twice with a rock. He further testified that he had heard that the deceased had threatened one Mag Smith to do him serious bodily harm with a knife; all of which was some few months prior to the homicide and that said act on the part of the deceased was unprovoked by the said Smith, and that the deceased was prevented from cutting the said Mag Smith by bystanders; and that he had heard that the deceased, prior to the homicide, frequented negro sporting houses in the reservation, and that whilst intoxicated about two weeks prior to the homicide, without any cause or provocation whatsoever, the deceased beat and struck an inmate of that house.'

"He was also permitted to introduce evidence that the reputation of deceased was that of a violent and dangerous man. To none of this testimony did the State offer any contradictory evidence.

"8. Bill number eight relates to the ruling of the court in refusing to strike out an answer of the witness Frank Samaratina. After the witness had testified that he saw appellant strike deceased in the breast below the heart and saw the blood on the shirt of deceased and had seen the wound, he was asked 'What kind of a wound was that?' and without objection he answered, 'About an inch wide, a dirk knife.' Appellant moved to strike out the answer as calling for a conclusion of the witness and his motion was overruled. That deceased was killed with a dirk or two-edged instrument is amply shown by other testimony, and under such circumstances this bill would present no reversible error.

"In his Penal Code, section 1853, Mr. Branch states the following proposition:

" 'If the opinion of the witness as to the manner in which the injuries were inflicted, though incompetent, did not and could not operate to the prejudice of defendant, its admission is not ground for reversal,' citing Steagald v. State, 24 Texas Crim. App., 207, 5 S. W. Rep., 853.

"The Steagald case, in which a life penalty was assessed for murder, supports the proposition stated.

"9. Bill number nine shows that the witness Samaratina was asked by the State if he knew how long the defendant had been living in that sporting house in the reservation and that the witness answered, 'No, I never knew, I knew he was out there, laying up out there, that is all.' The objection was made that the question was irrelevant and immaterial and inadmissible for any purpose, and highly prejudicial. The object or purpose of the State in asking the question is not shown, and nothing is stated in the bill from which it can be determined whether or not the ruling was correct. The record shows that appellant had asked for a suspended sentence, and the jury was entitled to know what kind of man he was and what he did in passing on that issue. It was shown that the keeper of the house of prostitution was the wife of

appellant, and from the whole of the testimony we think the testimony admissible on the issue of suspended sentence.

"10.    The tenth bill complains of the ruling of the court in refusing to permit appellant to prove by the witness Samaratina on cross-examination that the witness had on the night before while the trial was in progress been arrested for vagrancy in a sporting house in the reservation.    The bill recites that the purpose of this testimony was to affect the credibility of the witness.    In section 169, Branch's Annotated Penal Code, citing many authorities from this court, the rule is thus stated:

"'Defendant or any other witness can not legally be impeached by proof that he was arrested for or charged with or convicted of a misdemeanor that does not impute moral turpitude.'

"One of the cases cited, Ellis v. State, 56 Texas Crim. Rep., 14, 117 S. W. Rep., 978, is directly in point since in that able opinion by Judge Davidson it is held that vagrancy is not one of those violations of the law which would justify proof of an arrest or conviction therefor as a matter of impeachment.

"11.    Bill number eleven is a blanket bill covering objections to three questions asked the wife of appellant.    Two of these questions were not answered so far as the bill discloses, and the objections to the only question answered are in no way verified as true.    In section 152 of Branch's Annotated Penal Code, on page 87, the rule governing a bill of exceptions taken because of going into new matter on cross-examination of the wife is thus stated:

"'A bill of exceptions taken to the action of the State in going into new matter on cross-examination of the wife of the defendant must, to be sufficient, show as a fact that she had not been asked as to such matter on her direct examination, or the direct examination must be set out in the bill of exceptions,' citing Brown v. State, 65 Texas Crim. Rep., 121, 144 S. W. Rep., 265; Golden v. State, 66 Texas Crim. Rep., 262, 146 S. W. Rep., 945.

"The answer of the witness that she did not remember whether or not she went out and hit deceased with a bunch of keys is in no way shown not to have been legitimate cross-examination.    On appeal the presumption necessarily is that the ruling of the trial court was correct unless it is shown otherwise, and we are unable to find either in this bill or in the statement of facts anything showing any improper cross-examination of appellant's wife, although the court is not required to go to the statement of facts to aid a bill of this character. It is unquestionably shown that the trouble first arose with the wife, and her acts and conduct were admissible that the transaction might be shown to the jury, she being a party to the entire trouble, whether the State's view or appellant's view is correct.

"12.    Bill number twelve complains of a question asked on cross-examination of the witness Fife, who had testified to the good reputation for peace of the appellant, as to whether it was true that ap-

pellant had the reputation of being kept up by sporting women and being a pimp. The bill does not show that the question was answered, and as the bill shows that the court informed the jury that it could only be considered by them in passing on whether or not they would suspend his sentence should that question arise, and could not be considered by them in passing on his guilt or innocence, no injury is shown."

The judgment is affirmed.

*Affirmed.*

[Rehearing denied June 14, 1916.—Reporter.]