Thomas E. Cooper v. The State.

No. 6928. Decided December 13, 1922.

Rehearing denied February 14, 1923.

1.—Murder—Manslaughter—Charge of Court.

Where defendant was charged with murder, convicted of manslaughter, and the lowest punishment assessed, a complaint of the charge of manslaughter passes out of the case.

2.—Same—Argument of Counsel.

Where the bill of exceptions complaining of the argument of State's counsel, drawing the inference that certain women were of immoral character, and that the court refused to instruct the jury to disregard the argument, this court in view of the entire record is not prepared to say that the trial judge was wrong in his conclusions.

3.—Same—Rehearing—Charge of Court—Manslaughter—Self-Defense.

Where the error in the court's charge on manslaughter might have led to a denial or abridgement of the right of self-defense, or may have caused the conviction of a higher offense than the facts warranted, the same is reversible error, even though the conviction be of manslaughter with the lowest penalty.

**4.—Same—Rehearing—Manslaughter—Self-Defense—Charge of Court.**

This court after a re-examination of the entire record is unable to bring itself to the conclusion that the charge of the court on manslaughter as given was not harmful for the reasons stated in the opinion of the court, upon appellant's motion for a rehearing, and the State's motion for a rehearing will therefore be overruled.

Appeal from the District Court of El Paso. Tried below before the Honorable W. D. Howe.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

*C. B. Hudspeth, L. A. Dale* and *A. J. Harper,* for appellant.—On question of the court's charge on manslaughter ignoring self-defense: Barbee v. State, 58 Texas Crim. Rep., 139; Casey v. State, 54 id., 586; Terrell v. State, 53 id., 608; Campbell v. State, 9 Texas Crim. App., 948; Driskill v. State, 22 id., 60; Higginbotham v. State, 23 Texas, 575; Hackett v. State, 13 Texas Crim. App., 414; Moore v. State, 15 id., 21.

*R. G. Storey,* Assistant Attorney General, and *C. L. Vowell,* for the State.—On question of charge of court: Hawthorne v. State, 28 Texas Crim. App., 214; Collins v. State, 91 Texas Crim. Rep., 153.

MORROW, Presiding Judge.—Appellant was charged with murder and convicted of manslaughter; punishment fixed at confinement in the penitentiary for a period of two years.

The appellant made some complaint of the charge on manslaughter. Without discussing it, it appears from the record that the conviction was for manslaughter and the lowest punishment was assessed. The rule is well settled that under such circumstances, ordinary defects in the charge on manslaughter will not work a reversal. Munos v. State, 58 Texas Crim. Rep., 147; Neyland v. State, 79 Texas Crim. Rep., 652, 187 S. W. Rep., 196. We find nothing in the charge in the instant case which justifies a deviation from this rule.

The district attorney, in his argument, said: "Cooper and Woodsworth had an agreement to take two prostitutes down the valley to practice their prostitution, when they had just as well have carried out these acts of prostitution in El Paso in some back yard or other place."

Woodsworth and the appellant were together at the time they met the deceased and his wife in a cafe at Juarez; that they had become acquainted in a gambling-house in Juarez in which the appellant was a player and the witness a faro bank dealer. Woodsworth said that he and the appellant had been in Juarez during the afternoon; that at the Tivoli they had lunch with some ladies whom they met there and made arrangements with them for that night. They were going out on a road down the valley, but not to any particular place. The girls were to meet them at the Glenn Hotel. He described the location of

the Glenn Hotel and said that they were to meet the girls in the lobby. The arrangements had been made at Juarez while the parties were eating dinner about three or four o'clock in the afternoon. The girls were going across the river and agreed to meet the appellant and the witness there in the lobby of the Glenn Hotel. The witness said he thought the girls were rooming there; that he understood them to say that.

The bill of exceptions complaining of the argument is qualified with the recital of these facts and the statement that he regarded the inference drawn by the district attorney that the women were of immoral character not unjustified and refused the request of the appellant to instruct the jury to disregard the argument. We are not prepared to say that the trial judge was wrong in his conclusion.

Appellant and deceased lived at the same hotel in El Paso. In the afternoon before the homicide, they met at a cafe in Juarez, Mexico, where the deceased and his wife were in the wine-room. The party left Juarez and went on the street car to El Paso, where later, at the Club House Cafe, the homicide took place. The witness Woodsworth was appellant's companion. While at the Club House Cafe, the appellant and Woodsworth were sitting at the same table with the deceased and his wife. The deceased was intoxicated and an altercation took place. Appellant left the cafe, but later returned and called to the deceased, who walked out of the door into the vestibule and was shot by the appellant. There was also evidence that the appellant had been drinking.

A police officer described the altercation between the appellant and the deceased in the cafe and related the fact that appellant went away and returned. From his testimony it appears that the deceased was pacing back and forth inside of the cafe, and as soon as appellant stepped upon the curbing, the deceased rushed out of the door and said something which the witness claimed was not audible; that he made a movement with his hand which the witness interpreted as indicating an intent to reach for a pistol, whereupon the shot was fired.

According to the State's testimony, no hostile demonstration was made by deceased, but he was called to the door of the cafe and shot by appellant.

The court instructed the jury in these words:

"If from the evidence you believe that the Defendant killed the said Morris Kiely but further believe that at the time of so doing the deceased had made or was about to make an attack on him, or that it reasonably appeared to the Defendant, from his standpoint at the time, that the deceased had made or was about to make an attack on him, which, from the manner and character of it caused him to have a reasonable expectation or fear of death or serious bodily injury and that acting under such reasonable apprehension or fear the Defendant killed the deceased, or if you have a reasonable doubt thereof, you will acquit the defendant."

Complaint is made because the court did not respond to appellant's exception and instruct thus:

"  .  .  . if from the evidence the jury believes defendant killed the said Morris Kiely, but further believes that at the time of so doing the deceased had come out of the Club Cafe and by his acts or conduct had led defendant to believe, or it reasonably appeared to defendant from his standpoint at the time that deceased had made or was about to make an assault upon him, which from the manner and character of it caused him to have a reasonable expectancy or fear of death or serious bodily injury, and acting under such reasonable apprehension or fear defendant killed the deceased, or if the jury has a reasonable doubt thereof, they would acquit the defendant."

In the light of the facts developed upon the trial, we are unable to discern such distinction between the charge given and that suggested as would materially affect the rights of the accused.

We have found nothing in the record which warrants a reversal. The judgment is therefore affirmed.

*Affirmed.*

ON REHEARING.

January 10, 1923.

LATTIMORE, JUDGE.—Upon more mature consideration of the facts in this case we are of opinion that we were in error in holding correct the charge of the court on manslaughter. If there be error in a charge on manslaughter which might have led to a denial or abridgement of the right of self-defense, or which may have caused a conviction of a higher offense than the facts demanded, such error could hardly be held harmless, even though the conviction be of manslaughter with the lowest penalty.

In this case the court in his charge on manslaughter gave the following:

"The attempted use of violence to one's person or the apparent attempted use of violence to one's person, as it reasonably appeared to the defendant at the time, and any condition or circumstance which is capable of creating and which does create sudden passion such as anger, rage, resentment or terror, rendering the mind incapable of cool reflection, is deemed adequate cause."

This was excepted to as misleading and as being calculated to permit a conviction of manslaughter upon evidence which would require an acquittal on the ground of self-defense. Reverting to the facts herein, it appears that following some words in the restaurant in which deceased, his wife, appellant and one Woodsworth were, the latter two left the place. Not long afterward, at a time estimated at from twenty minutes up, appellant came back to the sidewalk in front of the res-

taurant and Kiely, the deceased, went out there and almost immediately the shooting took place. Three eye-witnesses testified for the State. The wife of deceased swore as follows:

"I heard one shot there. My husband wasn't doing anything immediately before that shot was fired. He was standing there with his hands down at his sides. I didn't see the defendant do anything before the shot was fired. Mr. Kiely had been out there just about two seconds when the shot was fired—from the time he got out up to the time of the shooting. I heard no words spoken."

Mr. Babbitt testified as follows:

"I seen them talking to each other and I heard this remark, I thought he said 'Leave my wife alone' and I saw Mr. Cooper kind of step back. I wasn't paying much attention to them and next thing I heard the shot fired. It wasn't very long after I heard this remark 'Leave my wife alone' and Mr. Cooper stepped back that the shot was fired, it might have been a minute, I couldn't say positively. Kiely was standing facing Cooper just immediately before the shot was fired. He wasn't facing exactly towards the street, it was more of a southerly direction. If I remember rightly his hands were at his sides. I didn't see him make any motion or movement with his hands just before the shot was fired."

Mr. Barkalow testified for the State as follows:

"There was just an instant elapsed between the time I heard Kiely say 'Go on away and let me alone' and the time the shot was fired. I didn't notice any movement of either of them between the words that Keily spoke and the shot. As to what position Cooper had the pistol in when he shot Kiely I couldn't say, I couldn't see the pistol when he shot him. When I did see the pistol it was right this way. (Indicating in right hand near right hip.)

After I heard the door slam and saw Keily on the outside he did not at any time reach toward Cooper with his left hand and put his right back toward his pocket. He made no move at all, just stood there."

For the appellant witness Rottermund testified as follows:

"This man, Cooper, started diagonally across as though he was going to the Grand Hotel, as I supposed, and the minute Cooper stepped on the sidewalk this man came rushing out the door. So when he stepped the first step outside the door he said something that wasn't audible to me and he reached out his left hand in this manner (stretching out left hand from the shoulder)—Cooper got, I judge, about this distance (indicating about four feet)—this man came out of the restaurant and said something that wasn't audible, I don't know what he said, and got his right hand to his side like this (right hand near right side pants pocket). Cooper was in this position (left side toward Keily) and when he got his hand back like that Cooper fired from that position (right hand down at right side). I couldn't see the handle, I just

saw the barrel of his gun. The boy staggered back, like that, (indicating) and fell in the doorway."

From the above quotations it is made clear that there was no claim by the State of any assault, or the use of any violence or attempted violence on the part of deceased toward appellant at the time of the shooting, which would not amount to a justifiable homicide, but from which there might have arisen such condition of mind on the part of appellant as to make his offense no more than manslaughter. Apparently the State's case was that of murder, or if of a less degree of homicide, then possibly a conviction of manslaughter predicated upon something that had occurred prior to the meeting of the two men on the sidewalk just before the shooting. Appellant's theory was that of self-defense based on the attack or apparent attack upon him by deceased just before the shooting, as testified to by the witness Rottermund. From the facts above stated we are led to question the applicability of Manos v. State, 58 Texas Crim. Rep. 147, and of Neyland v. State, 79 Texas Crim. Rep., 652, 187 S. W. Rep., 196. We think the case of Casey v. State, 54 Texas Crim. Rep. 584, more in point. In that case this court, speaking through Judge Davidson, said:

"Under the charge quoted above and criticized by appellant, a conviction for manslaughter was authorized by reason of the actual attack made by the deceased upon appellant. If deceased made any attack upon appellant at all, it was with a knife with a threat to kill. That was an actual attack and justified appellant in shooting, and he would not be guilty under the law of self-defense. Therefore, manslaughter could not be predicated upon that state of case, for in giving this charge on manslaughter, from the standpoint of an actual or real attack made by deceased with his knife, accompanied by a threat to kill, the court authorized the jury to convict of manslaughter on a state of case under which appellant was justified by law, and a verdict should have been returned in his favor of acquittal." . . . We are of opinion that the charge criticized is erroneous, based upon a state of facts upon which self-defense alone could be predicated. We, therefore, are of opinion that this charge is incorrect; first, in basing the charge upon a real attack, and, second, in placing appellant's case before the jury so that he might be convicted of manslaughter on a case of self-defense."

In Terrell v. State, 53 Texas Crim. Rep., 607, we find the following stated:

"It is assigned as error that the court erred in giving the following charge: 'But in this connection I charge you, that if you believe that the instrument by which defendant cut and killed deceased was not in its nature calculated to produce death and would not ordinarily have produced death, but that it evidently appears to you from the manner in which it was used that the defendant intended to kill deceased, then he would be guilty of murder or manslaughter as you may find from all the evidence in this case and you are to be governed in this by this

charge defining murder in the first degree, murder in the second degree, and manslaughter.' Quite a number of reasons are assigned why this charge is error. Among these, it is suggested that this charge involves a positive declaration that the defendant would be guilty of murder or manslaughter under the conditions named, omitting from the consideration of the jury and withdrawing from them the theory of self-defense. As this charge is presented, we are of opinion this contention is correct. If the deceased was making an assault upon appellant's father, under the circumstances detailed in the statement of the case in this opinion, and was endangering his life or inflicting serious bodily injury upon him, or it so appeared to appellant at the time he went to the rescue of his father, he would not be guilty of any degree of homicide, but would be justified, and the facts show that the deceased was inflicting serious bodily injury upon the father of appellant during the difficulty in which appellant intervened in behalf of his father. This charge further, in our opinion, had the effect of nullifying and practically withdrawing from the consideration of the jury all theory of self-defense. Appellant may have intended if necessary to kill the deceased in the defense of his father's life, or to prevent serious bodily injury, which he had a legal right to do, yet under this charge this right was eliminated, and the jury were practically required to convict of murder or manslaughter."

Our conclusion is that under the facts of this case the charge complained of was erroneous, and that the jury might have been led to believe, notwithstanding it may have appeared to appellant that his life was in danger at the time he shot deceased, that the use or attempted use of violence on the part of deceased could only reduce the killing to manslaughter, and appellant thus have been deprived of his full right of self-defense. So believing the motion for rehearing is granted, the judgment of affirmance set aside, and the cause reversed and remanded.

*Reversed and remanded.*

### ON REHEARING

### February 14, 1923.

HAWKINS, Judge.—The State has filed a motion for rehearing insisting that our original opinion affirming the judgment was correct and that we fell into error in granting appellant's motion for rehearing and reversing. It is insisted that regarding the court's charge as a whole there could have been no injury to appellant, and no probability of the jury misunderstanding the charge, and therefore the case should be affirmed. After again carefully examining the charge we are unable to agree to the state's contention. If the court had instructed the jury substantially that attempted use of violence to one's person, or .

the apparent use of such attempted violence *which fell short of justifying appellant in acting in self-defense as it reasonably appeared to him from all the circumstances at the time,*—but that if such attempted violence or apparent attempt thereat, in connection with all the other facts and circumstances in evidence, created in appellant's mind such sudden passion of anger, rage, resentment or terror as rendered his mind incapable of cool reflection, and that this condition of mind under said circumstances would have been created in the mind of a person of ordinary temper then it would be deemed adequate cause,—there could have been no opportunity for a misconception on the jury's part of what the court was evidently undertaking to explain to them. We have been unable to bring ourselves to say· that the charge as given was not harmful for the reasons stated in our opinion upon appellant's motion for rehearing.

For the reasons given the state's motion for rehearing will be overruled.

*Overruled.*