ROBERT BEASLEY v. THE STATE.

No. 7093.    Decided May 2, 1923.

Rehearing denied March 26, 1924.

1.—Murder—Evidence—Pistol.

Upon trial of murder there was no error in refusing to permit the witness Green to testify that in the early part of the year 1921 he saw deceased in possession of a small automatic pistol which deceased claimed as his; to show that deceased was armed at the time he was killed. Distinguishing: Bethune v. State, 49 Texas Crim. Rep., 166.

2.—Same—Evidence—Threats—Arms.

Upon   trial of murder there was no error in rejecting testimony of the witness Green to the effect that the deceased came to said witness some weeks before the homicide and wanted to exchange his small automatic pistol for a larger one belonging to witness and witness asked him what he wanted with it, to which deceased replied he expected trouble, not naming defendant or anyone else; besides the so-called threat was not communicated to defendant.

3.—Same—Newly Discovered Evidence—Cumulative Testimony.

The rule is in this state that a new trial will not be granted for testimony that is only cumulative of that which is used upon the trial.

4.—Same—Remarks by Court—Practice in Trial Court.

Where, upon trial of murder, defendant complained that while his attorney was arguing the case and referring to testimony of a certain witness, that the trial judge commented on said argument and forbid same in such manner as to injuriously affect his rights, but the record shows that the court properly restrained the attorney from reciting facts   that were manifestly improper and not in evidence, there is no reversible error.

5.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, the evidence sustained the conviction, there is no reversible error.

6.—Same—Rehearing—Evidence—Arms—Isolated Instance.

Where appellant again contended in his motion for rehearing that this court erred in upholding the action of the trial court in rejecting the testimony of the witness Green that he saw appellant in possession of a pistol some months before the homicide, this court has again carefully examined the record and finds no error; besides an isolated instance of pistol carrying on part of the deceased was not admissible. Following: Andrus v. State, 165 S. W. Rep., 189.

7.—Same—Threat—Statement of Deceased.

The alleged statement of deceased to the witness Green was not a threat and is as susceptible of the construction that it expressed fear of an attack from the parties referred to as the converse, and there was no error in not admitting this testimony.

8.—Same—Second Application for Rehearing.

A second motion for rehearing is not authorized in the instant case and the same is refused.

Appeal from the District Court of Taylor.   Tried below before the Honorable W. S. Ely.

Appeal from a conviction of murder; penalty, seven years in the penitentiary.

The opinion states the case.

*J. F. Cunningham* and *W. P. Mahaffey,* for appellant.—On question of excluding testimony of witness Green:   Henson v. State, 168 S. W. Rep., 89, and cases cited in opinion.

On question of remarks of court: Lembach v. State, 12 Texas Crim. App., 593; Chapman v. State, 147 S. W. Rep., 518; Anselin v. State, 160 id., 713; Beason v. State, 43 Texas Crim. Rep., 449.

On question of newly discovered evidence: Black v. State, 160 S. W. Rep., 722; Prater v. State, 60 Texas Crim. Rep., 88.

*R. G. Storey,* Assistant Attorney General, and *Stinson, Coombes, & Brooks,* for the State.—On question of so-called threats: Echols v. State, 170 S. W. Rep., 789; Patterson v. State, 56 id., 59; Willis v. State, 49 Texas Crim. Rep., 142; Wilson v. State, 158 S. W. Rep., 513; Neyland v. State, 187 id., 196.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Taylor County of murder, and his punishment fixed at seven years in the penitentiary.

The State's testimony establishes that deceased was standing in a street in the town of Merkel in Taylor County, with one foot resting upon the running board of an automobile, the bows of which were being held by his hands while he was engaged in conversation with his sister and brother-in-law, and that from a position on a near by sidewalk where he was standing with his brother, appellant fired a number of shots at deceased, one striking him in the temple and going through part of his head, and three others penetrating different portions of the body. There is no testimony of the finding of any kind of weapon upon the body of deceased.

The killing took place in July, 1921. Appellant and his witnesses claimed that in January of said year deceased had accused appellant and a number of other men of having been criminally intimate with the wife of deceased prior to his marriage to her, and that deceased endeavored to compel said men, by threats of disclosure and personal violence, to each pay him the sum of three hundred dollars or thereabouts. It was asserted that each of said men refused to pay said money and that deceased made threats of what he would do to them. Appellant said that deceased told him in January that he would give him until morning to get up said money. In the same connection appellant also said that deceased stated to him that he was just going to give him forty minutes to get it up.

In his brief in this case appellant insists that the trial court erred in refusing to permit his witness Green to testify that in the early part of the year 1921 he saw deceased in possession of a small automatic pistol which deceased claimed as his. Appellant claimed this testimony was admissible as a circumstance tending to show that deceased was armed with a pistol at the time he was killed. He and some of his witnesses testified that immediately before he began shoot-

ing, deceased looked at him and dropped his hand from the bow of the automobile which he was holding toward his pocket. Appellant testified that he had been told that same evening that deceased was threatening him, and also that along about sundown he saw deceased and Sam Cook standing near the corner of a street and when he passed them he spoke to Cook, and Cook left deceased and came to appellant and said, "Let's walk down here where nobody won't hear" and that they walked down to a garage and sat down and that Cook said to him, "John is going to kill you" and that Cook further said, "He will sure kill you if you don't get the money," and appellant said he replied to Cook, "I am not going to get him any money, and I am not going to leave the country, I have as good a shot as he has, I have as good a chance as he has". The killing took place upon a public street and a number of people were in the immediate vicinity. Death occurred almost instantaneously, deceased falling where he stood. No one of the people who were about him testified suggesting in any manner the presence or possession on the part of deceased, of any pistol. We would not be disposed to hold the action of the trial court in rejecting testimony of the fact that deceased had a pistol some months before, so materially erroneous as to call for a reversal of this case. In our opinion the case differs materially from that of Bethune v. State, 49 Texas Crim. Rep., 166, cited and relied upon by appellant. In the instant case the State did not controvert in any way the ownership of a pistol on the part of deceased. Notwithstanding the fact that a number of relatives and friends of deceased were placed upon the witness stand for the State, none of them were asked relative to his ownership of a pistol. As we understand the case of Bethune v. State, supra, it is more applicable to another contention of appellant than the one under consideration.

Appellant contended also that the court erred in rejecting testimony of his witness Green to the effect that deceased came to said witness some weeks before the homicide and wanted to exchange his small automatic pistol for a larger pistol belonging to witness and witness asked him what he wanted with the larger pistol, if he expected any trouble, to which deceased replied, yes, he was expecting trouble with three or four sons-of-bitches, not naming the defendant or anyone in that connection. This testimony of appellant's was rejected and error assigned, the contention being that deceased referred to appellant and other men to whom he had gone and tried to extort money because of the criminal intimacy with his wife above referred to. The State's objection to the introduction of this testimony was that the threat, if any, was not communicated and was a general threat not shown to have been directed toward this appellant. Appellant further contended that the making of the threat would have a tendency to show that deceased was armed at the time he was killed.

For the purposes of considering this matter, we state that it appears from this record that appellant claimed that deceased charged that some six or seven men had been intimate with his wife before he married her. One of the men named by the appellant's witnesses in this connection testified that before deceased married the woman he came to him and talked to him about it. All of the men implicated, who were used as witnesses, denied emphatically the intimacy referred to. The appellant's witnesses testified that deceased in person came to four of the men supposed to be implicated and demanded of them money, basing his claim upon the fact of said intimacy, and his purpose to compel them to pay him therefor, and it was asserted that he sent his brother to another one of said parties demanding money.

In the case of Bethune v. State, 49 Texas Crim. Rep., 166, above referred to, we held that a statement made by deceased to a witness which was as follows: "I am going to Terrell. I have a son-of-a-bitch on a farm near there, and I am going to put him off", was admissible where it was shown that the accused was a tenant on a farm of deceased near Terrell, the question being as to who began the difficulty. In this connection we observe that the matter might present more difficulty if it were not for the fact that the record in this case is replete with testimony of threats made by deceased, unmistakably directed at appellant, said threats ranging in point of time from the afternoon preceding the killing that night back over a period of a number of months. In such case we have no doubt of the proposition that the rejection of the general threat referred to by witness Green, was not of that harmful character that would call for a reversal. It would not seem at all likely if the jury were not disposed to give weight enough to the testimony of the numerous witnesses to personal threats of deceased toward appellant, and of threats whose necessary implication included him, which were admitted in evidence, that the admission of the general threat complained of would have aided the jury to believe that deceased begun the difficulty or was armed at the time. It was not shown that the statement made by deceased to Green relative to the pistol had been communicated to appellant. The cases of Neyland v. State, 79 Texas Crim. Rep., 652, 187 S. W. Rep., 196; Echols v. State, 75 Texas Crim. Rep., 369, 170 S. W. Rep., 789; Wilson v. State, 70 Texas Crim. Rep., 627, 158 S. W. Rep., 513; Lubbock v. State, 66 Texas Crim. Rep., 309, 147 S. W. Rep., 258; Patterson v. State, 56 S. W. Rep., 59, and Willis v. State, 49 Texas Crim. Rep., 142, afford some light on the proposition.

Another matter seriously contended for by appellant is that he has discovered new evidence since his conviction which would be material.

Appellant claimed that on the afternoon of the homicide and not very long prior thereto, deceased approached a car in which were

seated appellant's wife and her sister-in-law and put his finger in his mouth and moved it in an insulting manner and lolled out his tongue and winked at her, and that she communicated these facts to him and that it made him very angry, and that when he killed deceased he did so for the two reasons, viz: that he thought deceased was about to draw a weapon and attack him,—and that he was over-mastered by the passion produced by the claimed insult to his wife. Appellant's wife testified fully to the incident referred to, and he introduced a witness named Teaff, who said he was passing by on the sidewalk and saw the occurrence, and whose testimony corroborated that of appellant's wife. The newly discovered testimony was that of another witness who made affidavit that he was not far away on the sidewalk and that he saw deceased approach the car in which appellant's wife was seated and saw him make the insulting motions with his hand and mouth referred to. When the affidavit of this newly discovered witness was presented with the motion for new trial, it is made to appear that the court sent for the witness and he was interrogated by the court, the district attorney and an attorney privately prosecuting the case. From testimony offered on the hearing of the motion for new trial it seems that the newly discovered witness stated to these parties that while he was on the sidewalk as stated by him in his affidavit, that deceased had his back toward him and he could not see his face at the time he indulged in the alleged insulting conduct. The rule seems to be well settled in this State that a new trial will not be granted for newly discovered testimony that is only cumulative of that introduced upon the trial. Mr. Branch cites many authorities in Sec. 203 of his Annotated P. C., in support of this proposition. If full effect were given by us to the affidavit of said witness, it would unquestionably be but cumulative of that of Mr. Teaff and appellant's wife.

Appellant also complains of the fact that while his attorney was arguing the case and referring to the testimony of the witness Teaff, that the learned trial court made comments upon said argument and forbade same in such manner as to injuriously affect appellant's rights. Referring to the bill of exceptions complaining of this matter, it appears that appellant's counsel said: "Gentlemen of the jury, some of you know Ed Teaff and you know if there is an honest and truthful man in this world, it is Ed Teaff; and he has testified to seeing a portion of said insults". This is the statement of the argument of counsel as it appears in the bill of exceptions originally presented to the trial court. As said argument is stated in the qualification attached to the bill of exceptions it is made to appear that counsel said that he "knew Ed Teaff personally, and knew that no more honest or truthful man ever lived in the world and that he knew every word that Ed Teaff testified to was the God Almighty's

truth, and you, gentlemen, who know him know that every word Ed .Teaff uttered was the God Almighty's truth''. It is also stated that at this juncture the court interrupted counsel and told the jury orally that they must not consider any remarks of counsel that were not a discussion of the evidence in the case, and upon questions of counsel to the court to know what the court referred to, the court replied that portion of counsel's argument wherein he referred to Ed Teaff as an honest and truthful man as ever lived, that there was no proof of such fact. In our opinion the court did not exceed his rightful province. The State is powerless to preserve erroneous arguments and arguments of facts outside the record, by bill of exceptions, and unless the trial court in a proper case does in some manner call attention to inappropriate argument, same might be made and the State be without remedy. The record in this case does not reflect any proof of the reputation or standing of witness Teaff, and while it might be argued as good from the lack of an attack upon it, it would be manifestly improper for counsel to assert that it was good from his own personal knowledge of it, or according to the personal knowledge of any of the jurors.

There are other matters complained of in this record which have received our consideration. The great preponderance of testimony in the case seems to support the proposition that deceased was doing nothing at the time he was shot and killed by appellant. The jury have considered appellant's claim that his offense be reduced to manslaughter because of the alleged insult to his wife and have resolved that issue against him. In our opinion they were justified in doing so. They might well have given him a much more serious penalty than was affixed by their verdict.

Finding no reversible error in the record, an affirmance will be ordered.

*Affirmed.*

ON REHEARING.

June 29, 1923.

LATTIMORE, JUDGE.—Appellant strongly contends in his motion for rehearing that we erred in upholding the action of the trial court in rejecting the testimony of the witness Green that he saw appellant in possession of a pistol at Baird, Texas, some time in the spring of the year, deceased claiming that said pistol belonged to him. In addition to what was said by us in disposing of this matter in our original opinion, we observe that it was held by this court in the Hysaw case, 69 Texas Crim. Rep., 562, 155 S. W. Rep., 941, that proof of an isolated instance of pistol carrying on the part of deceased offered

for reasons similar to those here was not admissible.  See also Andrus v. State, 73 Texas Crim. Rep., 329, 165 S. W. Rep., 189.  Appellant's only ground of exception to the refusal of said testimony was that it tended to show that deceased was armed at the time of the homicide. Neither appellant nor any other witness for him, nor for the State, testified that deceased was armed on the occasion of the homicide. He was in his shirt sleeves.  He was shot in the temple, death occurring almost at once.  He was immediately surrounded by many people and a number of witnesses testified that he was unarmed.  Evidence so remotely capable of the inference claimed for it, as is that under consideration, ought not to be deemed of sufficient importance to call for a reversal because of its rejection.

In reference to the only other ground of the motion, which is that we erred in upholding the rejection of the testimony of said witness Green to the effect that deceased wanted to exchange an automatic pistol for a larger one belonging to witness, some weeks before the killing, saying that he was exepecting trouble with three or four son-of-bitches, we state that we entertain serious doubt as to whether this statement could be held to be of that definite character necessary to make it admissible in the first instance.  In Holley's case, 39 Texas Crim. Rep., 301, this court held that a threat made on the day of the homicide "To kill a son-of-a-bitch" was not specific enough, though appellant and deceased had been at enmity for some time.  Such threat being imputed to the accused in said case, same was reversed for the error of its admission.  In Gaines v. State, 53 S. W. Rep., 625, the rule seems to be laid down that unless it appear that the threat or statement introduced against the defendant was directed at the deceased, or had reference to him, it would not be admissible.  Many cases are cited by Mr. Branch in his Annotated P. C., pp. 1167-1168, on this subject.  The statement here under discussion was not a threat and is as susceptible of the construction that it expressed fear of an attack from the parties referred to, as the converse.  We think the matter correctly decided in our original opinion and a review of the authorities cited and discussed in the able motion and supplemental motions for rehearing filed by appellant, have not changed our views.

The motion for rehearing will be overruled.

*Overruled.*

OPINION ON APPLICATION TO FILE SECOND MOTION FOR REHEARING.

March 26, 1924.

HAWKINS, Judge.—Appellant has requested permission to file a second motion for rehearing. We have examined his request and the written argument in support thereof. We have not been led to believe our former disposition of the case erroneous.

The request is therefore refused.

*Refused.*