## JIM GARNER V. THE STATE.

### No. 609.   Decided April 23.

1. **Murder—Charge—Retreat and Renewal of Difficulty—Self-Defense.—** On a trial for murder, where the evidence raised the issue as to whether defendant retreated and was being pursued by deceased with a knife when the fatal blow was delivered, or whether deceased remained in the room, and defendant, after retreating to another room, seized a hatchet, and returning to the room in which deceased was, struck the fatal blow, *Held*, that a charge instructing the jury, that "while the defendant was not bound to retreat when deceased assaulted him, yet if he did retreat to a place of safety, and after getting out of danger, and without any reasonable grounds to apprehend any further injury from deceased, he armed himself and returned and killed deceased, he would not in such a case be justified on the ground of self-defense," was correct and pertinent to the evidence.

2. **Same—Right of Self-Defense as Long as Apprehended Danger Lasts.—** On a trial for murder, where the issues were as stated in paragraph 1 above, and the court instructed the jury, "that if deceased made an unlawful attack upon the defendant, such as to produce in his mind a reasonable apprehension of death or some serious bodily harm, the defendant had the right to act upon such apprehension, as long as it existed, and to retreat and arm himself; and if it reasonably appeared to him, from his standpoint, that deceased had not abandoned the attack, and that he was still in danger, he had the right, in self-defense, to return and kill him;" *Held*, that the instruction was a fair presentation of the law upon this phase of the case. · .

3. **New Trial—Surprise—Newly Discovered Testimony, which is Cumulative.—** Where, on a motion for new trial, defendant claimed that he was deceived and misled by the State's counsel as to whether a certain fact would be contested by the State on trial, and it appeared that the first witness introduced by the State did controvert the existence of such a fact; and defendant made no motion to continue or postpone the case on the ground of surprise, but proceeded with the trial and introduced his testimony relative to the controverted fact; and where it further appeared, that his newly discovered evidence was but cumulative of the testimony of his witnesses as to such controverted fact, *Held*, that the new trial was properly overruled.

APPEAL from the District Court of Red River.   Tried below before Hon. E. D. McCLELLAN.

This appeal is from a conviction for manslaughter, the punishment assessed being a term of two years in the penitentiary.

The opinion states the case very briefly, but sufficiently.

*J. C. Hodges*, for appellant.   (No brief has come to the hands of the Reporter.)

*Mann Trice*, Assistant Attorney General, for the State.

HENDERSON, JUDGE.—The appellant in this case was tried under an indictment charging him with murder.   The jury found him guilty of manslaughter, and assessed his punishment at confinement in the State penitentiary for a term of two years.

The appellant, in his first assignment of error, complains of the following language in the court's charge:   "While the defendant was not bound to retreat when Blackburn assaulted him, if he did assault him,

yet, if he did retreat to a place of safety, and if, after getting out of danger, and without any reasonable grounds to apprehend any further injury from Blackburn, he armed himself, and returned and killed Blackburn, he would not in such case be justifiable on the ground of self-defense." Appellant insists that this was error, because the evidence presented no phase of the case which authorized such charge. The difficulty in this case appears to have occurred over a game of cards. There is evidence showing that the deceased made a demonstration against the defendant with a knife; that the defendant left the room hurriedly; that he seized a hatchet in an adjoining room, and returned to the door of the room in which the difficulty had originated, and either struck the deceased with the hatchet still in his hand, or hurled it at him and struck him, which caused his death. The evidence in the case left it an issue to be tried by the jury whether or not the deceased was pursuing the defendant at the time that the lick was struck, or whether he remained in the room, where defendant had left him, and defendant, after retreating from the room to another room, and not being followed by the deceased, seized the hatchet, and returned to the room, and then struck the fatal blow. In this connection the court submitted to the jury the charge already quoted, and immediately following the same, and as a part thereof, the judge used this language: "But in this connection I instruct you, that if Blackburn made an unlawful attack upon the defendant, such as to produce in his mind a reasonable apprehension of death or some serious bodily harm, the defendant had the right to act upon such apprehension as long as it existed, and to retreat and arm himself, and if it reasonably appeared to him from his standpoint that Blackburn had not abandoned the attack, and that he was still in danger, he had the right in self-defense to return and kill him." This whole charge, when taken together, fully and adequately presented the issues in the case, both for the State and the defendant, and, in our view, was a fair presentation of the law upon this phase of the case.

The appellant also contends in this case, that it should be reversed because of the refusal of the court, in connection with the alleged conduct of the State's counsel, which he supplemented by the affidavits of newly discovered evidence, to grant him a new trial. To support his contention, the appellant presents the affidavit of one Garner, the father of defendant, to the effect, that before the trial of the case, and while defendant was getting up his evidence, he interviewed one Feagin, employed as counsel to represent the State, with reference to a knife alleged to have been used by deceased in the difficulty, and to have been found in his hand after his death, to ascertain whether or not the State would make any contention with reference to the ownership by deceased of said knife and his possession of it during the difficulty; and that said Feagin informed him that he had seen Mrs. Blackburn, the wife of deceased, and she stated that it was the knife of her husband, and that the State would not question the fact as to the possession of said knife

by the deceased at the time of the difficulty. Appellant says, he rested upon said assurance, and made no further effort to get testimony with reference to the possession of the knife by defendant. On the trial of the case, of the three or four witnesses who saw the difficulty, all of them, with perhaps one exception, testified to seeing the deceased with the knife during the difficulty; that when he got up from the table, where they were playing cards, he drew his knife, and without any provocation on the part of defendant, told him he would cut his God damned throat. Appellant himself testified, that deceased cut at him with the knife before he got out of the room, and cut his coat and vest across his breast, and these places were seen by other witnesses shortly after the difficulty, and were found to be cut. When the State put Mrs. Blackburn on the stand, she testified to facts strongly indicating that the deceased did not have his knife during the difficulty. She testified: "My husband did not have any knife when he left home on the morning of the 26th of December. He borrowed my son's knife a while before he left. He used it, and then returned the knife to my son." There was also testimony offered by the State suggestive, from the way in which the knife was found in deceased's open hand, that it may have been placed there by some one after his death, and the suggestion was further made, that this might have been done by the defendant, as testimony was adduced showing that he went back into the room and staid a few moments, after he had struck the fatal blow, when no one else was there. In connection with his motion for a new trial of the case, defendant presented the affidavits of three witnesses, to the effect, that the deceased did have his knife on the day he was killed. The affidavit of one witness shows, that he met the deceased as he came to the town of Detroit, where he was killed, and that he took his knife out of his pocket, and used it in opening a bottle of whisky. Another witness testifies, that sometime during the day, and near the saloon where he was killed, he saw him with his knife, whittling. Still another testifies, that a very short time before the difficulty he saw the deceased in the saloon with his knife open, whittling. Defendant shows by his affidavit, that after his assurance before the trial that the possession by deceased of his knife would not be put in issue, he made no effort to discover this testimony, but, after his conviction, he immediately set about to ascertain whether or not he could show by other witnesses than those present during the difficulty that deceased had his knife on that day, with the result of finding the evidence as above stated.

It is not to be gainsaid that on the trial of this case, or the crucial question as to the nature and character of the assault made on defendant by deceased, this additional testimony would have been important. If the jury believed that the deceased assaulted the defendant with only his hands and fists, they might have believed the defendant, in killing deceased in resistance of such an assault, guilty of manslaughter; whereas, if they believed that the assault was being made by deceased

on defendant with a deadly weapon, that he was authorized to slay him in self-defense. The question thus presents itself whether the appellant, in connection with this matter, acted with that degree of diligence which the law requires. It appears that Mrs. Blackburn was the first witness placed on the stand by the State, and it was developed in her testimony that the deceased did not have his knife on the day of the difficulty, and the defendant was then put upon notice that, whatever the agreement between Feagin (representing the State) with the father of defendant, the State did not propose to abide by such understanding. That the defendant recognized the situation is evidenced by the fact that the appellant's counsel asked the witness Mrs. Blackburn if she did not tell Feagin, when he carried the knife to her which he had procured from the coroner, that same was her husband's knife, and the one he had when he left home. She denied this, stating that Feagin did not show her any knife, and did not ask her anything about it. When the defendant was thus apprised that the State was making an issue as to the possession by deceased of said knife, it was the duty of appellant to immediately move the court to permit him to withdraw his announcement and postpone or continue the case in order to enable him to procure further testimony to rebut this evidence. The record shows that Mr. Feagin was sick at the time, and so his testimony could not then be produced in impeachment of the witness Mrs. Blackburn. The defendant made no motion to postpone or continue the cause, but seems to have speculated on the result and proceeded with the trial, possibly believing that he had sufficient testimony as to the possession by deceased of the knife at the time of the difficulty. This the law will not permit him to do; and, moreover, the newly discovered testimony would be but cumulative of the evidence produced before the jury on this question. McAdams v. The State, 24 Texas Crim. App., 86.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.