## Will Howard v. The State.

### No. 3772.    Decided April 29, 1908.

**1.—Murder—Statement of Facts—Time of Filing—Erasures.**

Where upon appeal from a conviction of murder, the appellant claimed that certain erasures and changes had been made in the statement of facts without his knowledge and consent, and that it was not made up in compliance with sections 6 and 14 of the Act of the Thirtieth Legislature. Held, that said act with reference to time of tendering statement of facts to attorneys is directory, and that a statement of facts bearing the agreement of both parties to the record, approved by the court and filed within time will not be stricken from the record in the absence of fraud or manifest unfairness.

**2.—Same—Charge of Court—Burden of Proof—Presumption of Innocence.**

Where upon trial for murder, the court charged on the presumption of innocence and reasonable doubt to every issuable question, a criticism on that ground was untenable.

**3.—Same—Charge of Court—Retreat—Charge as Entirety.**

Where upon trial for murder the evidence raised the issue, that the deceased had abandoned the difficulty, and that defendant returned to where deceased was, and without any hostile act on the part of the latter shot and killed him, there was no error in the court's charge, in submitting the issue of self-defense, that defendant would not be justified in killing deceased if at the time he was out of danger and without reasonable ground to apprehend other injury from deceased; considered in the light of the whole charge, and where the court's charge taken as an entirety correctly applied the law to the facts. Following Garner v. State, 34 Texas Crim. Rep., 356.

**4.—Same—Evidence—Animus of Deceased.**

Upon trial for murder the court correctly refused to admit testimony that defendant had furnished information to the officials as to violations of the law by deceased; besides this matter was testified to by other witnesses.

**5.—Same—Evidence—Opinion of Witness.**

Upon trial for murder there was no error in the court's refusal to admit the opinion of a witness who had been counsel for defendant's witness, to the effect that in his opinion there was no foundation for the charges preferred against said witness; and to enter into an investigation of the merits of these charges.

**6.—Same—Argument of Counsel.**

Upon trial for murder there was no error in the State counsel's argument, to the effect that the time had come to put a stop to murder in the county of the prosecution, and if the jury turned defendant aloose it would be a disgrace to their civilization, and they should not establish such a precedent in said county; that with such a man loose their lives as citizens would not be safe; this being a deduction from the facts.

**7.—Same—Sufficiency of the Evidence.**

Where upon trial for murder the evidence was conflicting, and there was much testimony upon which a verdict for manslaughter could have been found; yet there was other testimony sustaining a verdict of murder in the second degree, the same will not be disturbed.

Appeal from the District Court of Shelby. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of murder in the second degree; penalty, fourteen years imprisonment in the penitentiary.

The opinion states the case.

*Bryarly, Walker & Chamness,* for appellant.—On question of presumption of innocence: Sanches v. State, 55 S. W. Rep., 44; Jones v. State, 13 Texas Crim. App., 1; Black v. State, 18 Texas Crim. App., 124. On question of charge on retreat: Howard v. State, 18 Texas Crim. App., 348; McFarlin v. State, 41 Texas, 23. On question of self-defense: Horbach v. State, 43 Texas, 242; Bonner v. State, 15 S. W. Rep., 821; Cochran v. State, 28 Texas Crim. App., 423; 13 S. W. Rep., 651; Garner v. State, 34 Texas Crim. Rep., 356; 30 S. W. Rep., 782; Burnett v. State, 51 Texas Crim. Rep., 20; 100 S. W. Rep., 381. On question of animus of witness: Phipps v. State, 34 Texas Crim. Rep., 560; 31 S. W. Rep., 397. On question of impeaching witness: Brace v. State, 43 Texas Crim. Rep., 48; 62 S. W. Rep., 1067. On question of new trial: Owens v. State, 35 Texas, 345; Turner v. State, 38 Texas, 166; State v. Webb, 41 Texas, 67. On question of statement of facts: Spencer v. State, 34 Texas Crim. Rep., 238; 32 S. W. Rep., 690; Riojas v. State, 36 Texas Crim. Rep., 182; 36 S. W. Rep., 268.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was indicted in the District Court of Shelby County for the murder of one Jim Crump, alleged to have been committed on the 30th day of September, 1906. On trial he was convicted of murder in the second degree and his punishment assessed at confinement in the penitentiary for a term of fourteen years.

1. A preliminary question is made in a motion, to reverse and remand the case on the ground, substantially, that appellant had been deprived, without the fault of himself or counsel, of a fair and correct statement of facts. The particular effect of this motion is to assert, in substance, that there was in attendance upon the trial of the case an official stenographer who took a record of the evidence in the case as is required by law; that soon after the trial of the case, he prepared a statement of facts therein and presented same to Hon. Beeman Strong, the district attorney, for his approval in the time required by the provisions of the act of the last Legislature, p. 509, in reference to statements of facts; that at the time his attorneys signed the agreement written thereon that the statement prepared by them was a true and correct statement of the facts before the district attorney had examined same; that the district attorney failed and refused to agree to the statement of facts tendered him and failed and refused to notify appellant or his attorneys of his refusal to so agree, and that he gave neither appellant nor his attorneys any opportunity to prepare a statement of facts as in such

cases provided, and that said district attorney failed and refused to prepare a statement of facts and present same to the trial judge as in said act provided, and that the trial judge thereafter, without consulting with appellant or his said attorneys, erased in a large measure, and interlined in a large measure, the statement of facts as prepared by his counsel, and that the provisions of section 6, and section 14 of the act above referred to were not complied with in making out said statement of facts, in that neither appellant nor his attorneys were notified of the refusal of the district attorney to agree to said statement of facts, nor were they given an opportunity to insist that the provisions of said act be complied with; that they did not know of the refusal of said district attorney to agree to said statement of facts, nor that the court had not complied with the provisions of said act until said statement of facts had been approved by the said court, and had been sent by him to the clerk of the District Court of Shelby County for the purpose of being filed as the statement of facts in said cause. It is averred further by appellant that as he and his attorneys understand the facts, the statement as prepared by them and presented to said district attorney was and is a true statement of the facts in this cause; that the statement as prepared by them with the interlineations and erasures is now in this record; that their version can still be read through said erasures and reference is made to the original statement of facts sent up with the record to show the nature and character of the erasures and changes made. On this ground appellant moves and prays the court that the cause be reversed and remanded. Section 14, of the Act of the Thirtieth Legislature, chapter 24, page 509, provides in substance, that the appellant shall prepare a statement of facts and present the same to the opposite party or his attorney of record, for his approval within fifteen days after the final adjournment of such court, and when presented to such opposite party or his attorney of record, such opposite party or his attorney shall, within ten days thereafter, if he fail or refuse to agree to such statement of facts as submitted by the appellant, prepare or cause to be prepared, as hereinbefore provided, a statement of facts upon which he relies, to be submitted to the court as hereinbefore provided, and from such statement and record of the case, the court shall make up such statement of facts and approve and file the same within thirty days after such final adjournment of such term of the court. These provisions with reference to time, we think, are merely directory and intended to serve as only a regulation in the preparation of statements of fact. In other words, we have no doubt that if an appellant tendered his statement of facts within twenty days, or within twenty-seven days after the adjournment and it was approved by the court, either on agreement or without agreement by State's counsel, that we would and should recognize and treat it as a statement of facts properly filed and approved. We do not think that we are called upon to strike from the record or refuse to consider, or in any way question a statement of facts bearing the agreement of both parties to the record,

approved by the court and filed within the time provided by law on account of any matter precedent thereto, at least in the absence of actual proof or manifest unfairness. Again, if we may look to the original statement of facts before the alleged changes, erasures or interlineations we do not think it contains such changes, erasures or interlineations as materially affects the case or would affect a disposition of same.

2. The killing of Jim Crump by appellant grew out of a controversy and difficulty which occurred between the parties in the town of Timpson in Shelby County, on the 30th day of September, 1906. Appellant was, and for some four years had been a resident of said town and during most, if not all that time, had been in the restaurant business. The deceased had lived in or near the town of Timpson practically all of his life. On the day of the homicide appellant's wife had gone up the street to visit his brother who was in the same kind of business. A short time before the killing, appellant with his brother Charles walked up the street on which they were both doing business towards where appellant's wife was and had just passed the house of one Herring when they turned around the corner of Herring's house and passed rather out of sight. Here they became engaged in a difficulty in which, according to the testimony of appellant, the deceased, Crump, was wholly to blame. In any event, at this place the parties became involved in a difficulty during which time they all fell into a nearby ditch and in the course of which appellant fired two shots with his pistol. At this point the testimony differs widely. No one was hurt up to this time, at least seriously, and they all got up from the ground. According to the testimony of Herring and other witnesses, appellant walked away some twenty or thirty feet and when at this distance turned around and walked back a short distance and said to the deceased: "Now, damn you, I will get you this time." That at the time deceased was doing nothing and was making no demonstrations and was not even approaching appellant or going in his direction. By the testimony of other witnesses, and particularly that of appellant and his brother, it is claimed that notwithstanding he was walking away from deceased, the deceased started to follow him with an open knife and that at this juncture Charley Howard called out to appellant to watch out for the knife then in the hands of Crump, and that at this juncture and in this condition of affairs, appellant acting under reasonable apprehensions of danger as same appeared to him, shot and killed the deceased. This is not intended to include a statement of all the facts, but is a fair summary, we believe, of sufficient of the evidence to illustrate our opinion.

3. The first assignment of error complains of the charge of the court in that such charge fails, as appellant claims, to charge the jury that the presumption of innocence continued in favor of appellant throughout the trial of the whole case, and that the burden rested on the State to meet and overthrow this presumption of innocence by establishing by legal evidence the guilt of the appellant beyond a reasonable doubt.

The proposition submitted by them under this assignment is: "It is the duty of the trial court not only to charge upon every phase of the case, as presented by the facts, but to charge the whole of the law applicable to and governing the case and to give the defendant the benefit of every provision of law in his favor, and there is a marked difference between reasonable doubt and burden of proof." Among other things, the court charged the jury as follows: "The defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and in case of a reasonable doubt as to his guilt, he is entitled to be acquitted." The court also gave the following instruction: "The defendant is not only entitled to the benefit of any reasonable doubt as to his guilt but also as to the degree of his guilt." The court, in addition to this, applied the doctrine and law of reasonable doubt to every issuable question in the case. We think that this is sufficient, and that appellant's assignment of error cannot be sustained. In the case of Franklin v. State, 34 Texas Crim. Rep., 625, the court said: "The defendant in this case requested the court to charge 'reasonable doubt' upon every phase of his defense. The court gave a succinct and pertinent charge on the defendant's right of self-defense, as presented by the evidence in the case, and a charge was given on reasonable doubt as between the degrees of murder, and the jury were instructed, that if they did not believe beyond a reasonable doubt that the defendant was guilty of the charge they would acquit him; and it was not error for the court to refuse to give the special charge asked by defendant." See also Sanches v. State, 55 S. W. Rep., 44.

4. Counsel for appellant also attack the following portion of the court's charge: "While the defendant was not bound to retreat when Crump assaulted him, if he did assault him, yet, if he did retreat to a place of safety, and if, after getting out of danger and without any reasonable grounds to apprehend any further injury from Crump, he shot and killed Crump, he would not, in such case, be justifiable on the grounds of self-defense." This charge, if it stood alone, might be subject to the criticism and objection of counsel, but when considered in connection with the entire charge, it is not, we believe, subject to any fair criticism or objection. In this connection the court charged the jury as follows: "If, at the time of the killing, Jim Crump was advancing upon the defendant or was otherwise making such demonstration as under all the attendant and antecedent circumstances was reasonably calculated to produce in the mind of defendant a reasonable expectation or fear of death, or of serious bodily injury, then about to be inflicted upon him, and defendant killed him in order to protect himself, defendant is not guilty. In such case in order to justify defendant, it is not necessary that the danger should be real. It would be sufficient if the appearances, as viewed from the defendant's standpoint, were sufficient to produce in his mind a reasonable apprehension of the loss of life or of some serious bodily harm then apparently about to be in-

flicted upon him by deceased. Or, if Jim Crump had threatened to take the life of defendant, and defendant knew of the threats, and, at the time of the killing, Jim Crump by any act then done manifested an intention to execute the threats so made, then defendant is justifiable. But if Jim Crump at the time of the shooting was making no demonstration manifesting an intent to carry his threat into execution, the threats would not constitute a justification." Next follows the charge complained of, which to show its connection, we here again quote: "While the defendant was not bound to retreat when Crump assaulted him, if he did assault him, yet, if he did retreat to a place of safety, and if, after getting out of danger and without any reasonable grounds to apprehend any further injury from Crump, he shot and killed Crump, he would not, in such case, be justifiable on the grounds of self-defense." Then follows, in this connection, immediately, this clause: "But in this connection I instruct you that if Crump made an unlawful attack upon the defendant, such as to produce in his mind a reasonable apprehension of death or some serious bodily harm, the defendant had the right to act upon such apprehension as long as the ground for it existed, and if it reasonably appeared to him from his standpoint at the time of the killing that Crump had not abandoned the attack, and that he was still in danger, he had the right in self-defense to shoot and kill him." We think this charge not only not subject to any serious complaint, but it most admirably presents the issues raised by the testimony. Counsel for appellant sometimes overlook the fact that it is just as necessary and as much required of the court to submit to the jury issues raised by the State's evidence, and on which, under the law, a conviction could be had and ought to be had, as it is to submit matters wholly defensive. If it were true that Crump had abandoned the difficulty, was standing some thirty feet from appellant and was making no demonstrations to assault appellant, and if it be true, as some of the evidence indicates, that appellant returned to where deceased was and while he was committing no hostile act, or making any demonstration to commit a hostile act, shot and killed him, it would not be in self-defense; and the evidence raising such issue, the learned trial court not only was justified but was required to submit this phase of the case, and seems to have done so very clearly and in a manner furnishing no just or fair ground of criticism or complaint. In the case of Garner v. State, 34 Texas Crim. Rep., 356; 30 S. W. Rep., 782, it appeared that the defendant there, after being attacked by deceased with a knife in a difficulty arising over a game of cards, left the room and returned to the door where he struck deceased. The evidence was conflicting it seems as to whether deceased pursued defendant. In that case it was held that if Garner, after having gained a place of safety and without grounds for anticipating further injury from deceased, armed himself and returned to the conflict, he could not defend on the ground of self-defense, and that a charge submitting this issue was not ground for reversal, as being unwarranted by the evidence, where the court also

charged that said defendant, if reasonably apprehensive of death, or serious bodily harm from deceased, and if it reasonably appeared to him that deceased had not abandoned the attack and he was still in danger, had the right to return and kill the deceased.

5. It is next contended that the court erred in refusing to permit certain witnesses to testify that defendant had furnished the city marshal of Timpson with information as to the violation of the local option law by Crump and that based upon this information the said city marshal had filed a complaint against deceased charging him with violating the local option law. It is claimed that this testimony is admissible because the evidence shows the difficulty arose by deceased assaulting appellant because he, appellant, had, as deceased understood, informed on him for violating the local option law, and since this was the origin of the trouble such testimony became material. We do not think this testimony admissible, or if it be conceded that it should have been admitted, that it would or could have changed in the slightest the result of the case. It was shown by the evidence of a number of the witnesses that deceased made threats against appellant, which were communicated to him, on account of the acts and conduct of appellant in giving the information concerning the violation of the local option law by deceased.

6. We are asked again to reverse the case on account of the exclusion of the testimony of Judge J. S. Stephenson, who, if permitted, would have testified in substance that he was counsel for one W. H. Walker, a witness in the case, who had theretofore been indicted for theft of cattle. It appears from the record that Judge Stephenson was asked to state what facts there were to substantiate the charges and what, if anything, there was in these charges against Mr. Walker. The bill shows that if permitted to answer he would have said that there were no facts to substantiate these charges against Mr. Walker, and there was nothing in the charges and the State dismissed them without further prosecution. The record shows that this witness was permitted to testify that he was counsel for Walker in the cases referred to and that he investigated the facts of the case; that none of the cases against Walker were ever tried but that they were all dismissed. The testimony excluded was clearly inadmissible. The court was not called on to consume its time in investigating the merits of those cases. If it had been permissible to have permitted Judge Stephenson to have testified there was nothing in these cases, he would probably have been called on to have given the reason why he thought so. If under the law it was proper for him to give such testimony, the State would have had the right to have introduced, at least, the district attorney to state his opinion and give such reasons as might have occurred to him in respect to the same matter, and the case might have turned into an investigation of the probable ground for the indictment and prosecution of this witness. When the defendant was permitted to show, as he did show, that notwithstanding such indictment of this witness that the

same had been dismissed and none of the cases ever tried, the inquiry should have stopped there. The witness, Walker, was not interrogated about this matter, nor was he asked whether in truth or in fact he did take or steal the cattle as charged.

7. The next ground assigned for reversal is the misconduct of the district attorney in his closing argument to the jury. The language asserted to be improper is as follows: "Gentlemen of the jury, the time has come to put a stop to murder in Shelby County. If you turn this defendant loose it will be a disgrace to your civilization; you should not establish such a precedent in your county. With such a man loose your lives as citizens are not safe." In approving this bill the court states that the language quoted followed the summing up of the inculpatory facts and the deduction therefrom that defendant was guilty of cold-blooded murder, and that it was upon this assumption the language complained of was used. While quite vigorous we do not think the language used is so incendiary or inflammatory as to be a matter of serious complaint. It lies well within the right of the district attorney to urge the jury to put a stop to murder in Shelby County and to remind them of the consequences of the failure on their part to punish a guilty man, such as he evidently believed the appellant was. Some latitude must in every case be permitted to counsel. While the books teach us that counsel should rarely, if ever, express any personal opinion in any case, yet, we know that in practice it has been almost universal for counsel in cases, both civil and criminal, to express the most solemn and usually sincere conviction as to the rights of respective parties. As stated, we do not believe that we would be justified in setting aside the verdict for the language used.

8. The only assignment which remains for us to notice is one, in substance, to the effect that the verdict of the jury is contrary to and unsupported by the evidence. The contention of appellant is, in substance, that if guilty at all, he is guilty of no higher offense than manslaughter. The evidence in the case is quite conflicting and while there is much testimony in the record tending to sustain the appellant's contention that he is guilty of no higher grade of offense, if indeed of any at all, than manslaughter, there is other testimony unquestionably sustaining a verdict of murder in the second degree and for that matter, in our judgment, would have sustained a conviction of murder in the first degree. The credibility of the witnesses was exclusively a matter for the jury to decide and it does not lie with us, when there is evidence sustaining a verdict of the jury to temporize or falter in upholding it and enforcing their verdict.

Finding no error in the record the judgment of the court below is affirmed.

*Affirmed.*

Brooks, Judge, absent.