LATTIMORE, Judge.
 

 Appellant Scharff was adjudged guilty in the district court of Grayson County of possessing intoxicating liquor for purposes of sale, and his punishment fixed at one year in the penitentiary; appellant Daniel was convicted in said court of manufacturing intoxicating liquor, and his punishment fixed at one year in the penitentiary.
 

 The two appellants were found in a room occupied by Daniel, which was a part of the premises belonging to Scharff, — the occasion being
 
 *638
 
 that of a raid made by officers upon sqid premises. In Daniel’s room was an oil stove, and in another adjoining room was found a still, and in various parts of the adjacent house occupied by Scharff and his family were found considerable quantities of whiskey. The men were jointly indicated in an indictment containing two counts, one charging both with the manufacture of liquor and the other charging both with the possession of such liquor for purposes of sale. Upon their trial the jury rendered a verdict adjudging them guilty as above stated.
 

 In the record appears what is denominated bill of exceptions No. 1 in the ease of Scharff, and a similar bill of exceptions No. 1 in the case of Daniel, which bills set forth that the state elected to ask a conviction against Scharff on the second count, and against Daniel under the first count, and said bills proceed to assert that the verdict and judgment against each is contrary to the evidence, which is set out in the bill at some length. The bills appear to be taken to the refusal of a new trial to each appellant upon the ground of insufficient testimony. ¥e regret that we cannot agree with appellants’ contention. Both appellants testified on the trial. Daniel was the hired man of Scharff and occupied a little outhouse about thirty steps from the main dwelling. The raid was made by the officers at night and both appellants were found in the building occupied by Daniel. There was a partition in said outhouse. The first officer who entered testified that in the room where appellants were was a still, and that at the time of his appearing while the still was disconnected it was still warm. There were barrels of stuff deemed to be mash also in the outhouse, some of which was also warm. Another State witness testified that the still was first found in a little side room by the one in which the two appellants were found and that witness said he had moved it into the room where the men were before the advent of the witness above referred to. This witness testified that the still was warm, and the half barrel of mash found was also warm. The officers had a search warrant and went into the residence of appellant Scharff and found four gallon jugs of whiskey and more in a half gallon fruit jar. When they first found two of the gallon jugs, appellant then said that was all there was. Further search revealed another gallon in a corner of the kitchen under a lot of dirty clothes, and another gallon was found in the hall. This witness testified that when they found the gallon in the hall appellant said to his wife: “Why didn’t you have this stuff poured out before the officers got in here?” The liquor was corn whiskey and intoxicating.
 

 Appellant Daniel testified that on the night in question and shortly before the officers came, some parties came to the house and said they had something they wanted to leave for Mr. Scharff, and that he
 
 *639
 
 saw them carry something' into the house that looked like jugs. Witness said that one of the parties was a negro named Wortham, and the other was a man. called Smith, and that -he had never seen either one of them after that night. He further testified that in a few minutes after these men came and left something for Mr. Seharff, the latter also came to the house and he was telling Seharff about what these men had left when the officers came in. He said as far as he could tell what the men had when they came in, they had three jugs. He also testified that he did not know where the still came from unless these men put it in that little room; that he did not hear them put any barrel of water into the room, nor did he hear them put a barrel of mash in there; that he only saw them out in the yard and saw them set something on the porch, and that he did not pay much attention to what they were doing. Seharff testified denying any knowledge of the still or barrels of mash, or other paraphernalia, and swore that Daniel was telling him of things being brought to the house by some parties, when the officers made their entrance. In rebuttal the officers testified that they went up close to the premises of appellants on the night in question, and stopped their car back a distance from the house, and went up near the premises and watched for thirty or forty minutes in order to see what was going on, and that they did not see any parties come to said house, nor did they see the defendant Seharff drive up. Mr. Brinkley testified that he went into the little room where the still, etc., were and thaL he saw no means of exit or entrance except through the room occupied by defendant Daniel. Under these circumstances we find ourselves unable to agree with the contention made by appellants in the bills of exception above referred to.
 

 The second bill of exceptions was reserved on behalf of appellant Seharff complaining of the admission of the statement as to what he said to his wife in the hall, which is above quoted. ¥e would have no difficulty in concluding the statement to be a part of the res gestae of the transaction. Seharff was charged with possessing intoxicating liquor for purposes of sale. The liquor was found in his possession at his house. The statement that he made to his wife, apparently upbraiding her for not pouring the whiskey out before the officers got in there, would seem to be res gestae. However, we further observe that appellant while on the witness stand testified himself to the fact that he made the statement in substance as testfied to by the officers. In Parker v. State, 91 Texas Crim. Rep. 78, we discussed at some length the proposition that one who testifies on his own trial that he made the statements theretofore given in evidence against him by officer^, the circumstances showing that he was under arrest at the time he made the statements, would be
 
 *640
 
 receivable in evidence against him upon the theory that if he testified that he made the statements himself, this would remove the objectionable feature to its' reception when testified to by others as having been made by him while under arrest.
 

 Fi^dina’ no error in the record, the judgment will be affirmed.
 

 Affirmed.