## J. R. Silver v. The State.

No. 11108. Delivered January 11, 1928.
Rehearing denied June 28, 1928.
Second rehearing denied October 10, 1928.

The opinion states the case.

*W. N. Parker* and *Parker & Parker* of Fort Worth for appellant.

*Jesse E. Martin,* Criminal District Attorney, *Arthur L. Moore,* Assistant Criminal District Attorney of Tarrant County, and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is robbery with firearms; the punishment death.

The fact that appellant and his companion, Stone, deliberately planned to rob Roscoe Wilson, the deceased, and that, in carrying into effect their unlawful design, Stone murdered and robbed him of a large sum of money, while appellant sat by in an automobile, is not controverted. After blotting out the life of their innocent victim, appellant and his companion fled with their ill gotten gains to Oklahoma, where they were arrested. At the time of their arrest they were possessed of the spoils of the robbery. Each confessed. Not a mitigating circumstance appears in the record. Let this statement of the transaction suffice. A detailed statement of the testimony can serve no useful purpose.

In bill of exception Number 3, complaint is made of the receipt of the testimony of C. W. Bolan, police officer of Sulphur, Oklahoma, to the effect that upon the search of the automobile used by appellant it was found to contain three pistols, a box of cartridges, and two suitcases, each containing eighteen hundred dollars in currency.

No warrant authorizing the search of the car had been issued, and, in opposing the legality of the receipt of the testimony, appellant relied on Article 1, Section 9, of the Bill of Rights forbidding unreasonable searches and seizures without probable cause supported by oath or affirmation, and on Articles 4a and 727a C. C. P., which penalize an illegal search and forbid the receipt of testimony touching such search.

The search was made in the State of Oklahoma by officers of said state. However, in disposing of appellant's contention, it is not necessary to decide whether the inhibitions of the Constitution and statutes relating to the subject of search and seizure are confined to the action of officials of our state.

The search of an automobile upon the public highway may be made without a search warrant where the seizing officer has knowledge or information of facts constituting "probable cause." Carroll v. United States, 267 U. S. 132; Battle v. State, 290 S. W. 762.

"Probable cause" has been defined as "a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." Landa v. Obert, 45 Texas, 539.

The recitals of the bill disclose that the officer had sufficient information before the search to constitute probable cause. Said officer testified, in substance, that he had heard over the radio that there had been a hold-up and murder in Ft. Worth; that he had also gotten over the radio a slight description of the men who committed the crime; that he saw appellant and a man who gave his name as Wilson in Sulphur, Oklahoma, in a Chrysler Coupe, and that, in a conversation they had with him in regard to roads, appellant told him that he was from Dallas, Texas, and that they were going to Shawnee, Oklahoma; that the description he had received over the radio "tallied up with these two men I saw there, this defendant and Wilson."

The record shows that, while the officers were near the car driven by appellant, appellant and his companion came up; that appellant started to get in the car, and that one of the officers told appellant he wanted to look him over; that the officers were holding guns on appellant and his companion; that they demanded that appellant open the back end of the car; that after appellant unlocked the back end of the car, the officers discovered satchels containing the stolen money, and that they thereupon told appellant that they would take him to town for further investigation; that appellant said he would drive his car back to town, and that one of the officers told appellant that he (appellant) could ride in his (the officer's) car; that appellant replied, "damned if anybody drove his car back"; that the officer said, "No, you are going to ride in this car, and I don't want to have any argument out of you about it." The record further shows that in his voluntary confession appellant admitted that he committed the

robbery, acknowledged the possession of the automobile he was driving when arrested, and acknowledged possession of the fruits of the crime and the pistols used in its commission. Furthermore, appellant was driving the car in question when first seen in Sulphur, Oklahoma, by officer Bolan, and when arrested had the key to the back end of the car in which the suit cases and money were concealed.

Appellant's contention, as shown by bill of exception Number 4, that the statements made by him to the officers immediately after the search of the car were inadmissible for the reason that he was under arrest and the statutory requirements relating to confessions had not been complied with, cannot be sustained. Where a party is arrested, or sought to be arrested, for an offense, and resists the arrest, it is a legitimate fact to be proved. Mitchell v. State, 106 S. W. 124; Moreno v. State, 160 S. W. 361; Walker v. State, 169 S. W. 1156; Klein v. State, 277 S. W. 1074; Chester v. State, No. 11,157, Opinion delivered November 23rd, 1927, but not yet officially reported.

Appellant further contends that the statements attributed to him by the officers constituted a confession of ownership of the automobile in which the stolen property was found. Such statements, insofar as they showed that appellant owned the car in question, were inculpatory and constituted a confession in contemplation of Article 727 C. C. P., if appellant was under arrest. Willoughby v. State, 219 S. W. 468. Under such conditions, the statements would have been inadmissible in the absence of surroundings bringing them within the operation of the recognized exception to the inhibitions of Article 727 C. C. P. In view of the fact, however, that appellant's possession of the car in question was shown beyond dispute by his voluntary confession, the statement made by him at the time of his arrest relative to ownership of the car was harmless. Pettiett v. State, 272 S. W. 473; Scharff et al. v. State, 271 S. W. 83; Villegas v. State, 41 S. W. 610.

We perceive no error in the action of the court in permitting the state to prove by officer Williams that at the time of the arrest of appellant he and other officers found three pistols in appellant's car. In qualifying bill of exception Number 5, which preserves the complaint in question, the trial court states that the testimony showed a 38 caliber bullet was taken from the body of deceased, Roscoe Wilson; that appellant's confession showed that the guns found in the car belonged to appellant and his companion; that two of the pistols, one a 38 caliber and the other a 32 caliber, belonged to ap-

pellant, and that a 38 caliber pistol belonged to appellant's companion; that the pistol belonging to appellant's companion had been recently fired.

After appellant had been arrested and placed in jail, he was placed in an automobile by the sheriff and district attorney, and directed said officials to a point in Dallas County where a money bag was concealed, which was later identified by witnesses as looking like the money bag taken from Roscoe Wilson at the time he was killed and robbed. As shown by bill of exception Number 6, appellant objected to the testimony of the sheriff touching this transaction.

Whether accused be in custody or not, or be warned or not, his oral or written confession is admissible if in connection therewith he makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed. Branch's Annotated Penal Code, Section 63; Wade v. State, 248 S. W. 382; Broz v. State, 245 S. W. 707. The court did not err in admitting the testimony.

As shown by bill of exception Number 7, appellant lodged several objections to the introduction in evidence of his written confession. The chief objections were that it was shown on the face of the confession that same was made to Jesse E. Martin, district attorney, whereas the proof showed that it was made to Martin and two other officials, and further that the confession was inadmissible because so intermingled with the confession of Stone that it was necessary to introduce Stone's confession against appellant.

There is no vice in the fact that others were present and heard the confession at the time it was made to the district attorney. The proof and confession both show that the statements were in fact made to Jesse E. Martin, district attorney. Neither was the confession inadmissible because the statements of Stone were so intermingled with those of appellant that it was necessary to place such statements before the jury in connection with appellant's statements. It was uncontradicted that appellant and Stone acted together in the commission of the offense. They were both present when the confession was made, dictated it jointly, and signed it in the presence of each other. Moreover, the statements were identical. We think this constituted a proper predicate for the admission of the written statement. Blake v. State, 193 S. W. 1064.

Mrs. Wilson, mother of deceased, was a witness for the state. After she had stated her name, age, place of residence and the age

of deceased and his height, appellant objected both to this testimony and to what she might further say, assigning as his reason therefor that they anticipated what her evidence was and objected because there was no issue in the case as to the relative size and strength of the parties, and such testimony might be prejudicial to the rights of defendant. Such a bill brings before us no error. Certainly after much of the testimony of the witness had been given without objection, appellant's recourse as to same would have been to move the court to exclude it and instruct the jury not to consider such testimony. This he did not do. Nor are we aware of any rule of procedure which calls upon the trial court to sustain an objection to evidence not yet heard, until and unless same is stated to the court so that its relevance and materiality may be determined. We fail to find where the court below was called upon to exclude either that testimony heard before objection or that heard after the overruling of the anticipatory objection which did not apprise the court as to what was or would be the testimony so objected to. Appellant did not ask that the jury be retired so that the court might hear the evidence and thus determine its materiality. He did not state in substance or detail what the evidence would be. We find no error in the bill, but are further of the opinion that the evidence as same appears set out in the bill would not warrant a reversal even if improperly admitted.

Appellant brings forward several bills of exception in which he complains of the argument of the district attorney. As we understand the court's qualification of the bills under consideration, the argument complained of was invited by the argument of appellant's counsel. In this condition the bills fail to manifest error.

In his motion for a new trial appellant alleged misconduct of the jury, his complaint being that the jury, before arriving at a verdict, discussed his failure to testify. A review of the evidence heard on the motion convinces us that the trial court was warranted in concluding that no discussion of appellant's failure to testify, further than its mention, which was promptly reproved, was presented, and that the jury did not take his failure to testify as a circumstance against him. See Lamb v. State, 265 S. W. 1035.

Appellant also insists that the court should have granted his motion for a new trial because one of the jurors was prejudiced against him. It is stated in his motion, in substance, that appellant learned after the trial that the juror in question had stated that if he got on the jury he would break appellant's neck. The court heard

evidence on the motion. The testimony as to the statements attributed to the juror was conflicting. The juror expressly denied that he made the statements and it was shown by the impeaching witnesses that the juror's reputation for truth and veracity was good. This being the condition of the record, the trial court was warranted in concluding that the juror was fair and impartial. In Branch's Annotated Penal Code, Section 565, p. 288, the rule is stated as follows:

"When it is sought to show on the hearing of the motion for new trial that a juror before the trial had expressed an opinion of defendant's guilt or had made statements which showed a prejudice against defendant, the decision of the trial court on that issue will be sustained by the Appellate Court unless clearly wrong if the evidence bearing thereon was conflicting and was sufficient, if believed, to justify the action of the trial judge."

See also Meadors v. State, 275 S. W. 829; Shaw v. State, 22 S. W. 588.

In view of the fact that the jury has determined that appellant must pay with his life for the crime he has committed, we have given the most careful consideration to every question presented by this appeal. Our conclusion is that appellant was accorded a fair and impartial trial. The uncontroverted evidence discloses a most shocking and wanton crime. That the jury demanded a forfeiture of appellant's life is not surprising. No mitigating facts or circumstances are present.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion for rehearing appellant re-urges many of the questions discussed in our original opinion. We believe all of them to have been correctly disposed of. To again write at length would be largely a repetition, and the near approach of the end of the present term of court prevents any extended further consideration of the many points stressed. Appellant is particularly insistent that we erred in disposing of his complaint at the argument of the district attorney on the court's qualification that the remarks complained of were invited by the argument of appellant's counsel.

It is appellant's position that the statements of his counsel set out in the qualification and relied upon by state as inviting the objectionable argument, shows that the district attorney went far beyond the extended invitation. It must be apparent that it is most difficult for this court to accurately appraise a contention thus presented. The opinion of the learned presiding judge that the argument objected to was in response to remarks of appellant's attorney must of necessity have great weight with the reviewing court under the circumstances. Another thing that must be borne in mind is that the facts and surroundings of the particular case should be looked to in determining the effect of an argument complained of. The same language under a certain state of facts might be highly prejudicial and not so regarded under other circumstances. This is illustrated in Todd v. State, 93 Tex. Cr. R. 553, 248 S. W. 695; Coates v. State, 98 Tex. Cr. R. 314, 265 S. W. 891; Vineyard v. State, 96 Tex. Cr. R. 401, 257 S. W. 548. Where deliberate, useless, planned murder is committed in the perpetration of robbery and the death penalty merited under the facts we would hesitate long before attributing the assessment of such punishment to an argument. Under all the circumstances of the present case in connection with the qualification of the court on the bill in question we think the motion for rehearing should be overruled and it is so ordered.

*Overruled.*

ON APPLICATION TO FILE SECOND MOTION FOR REHEARING.

MORROW, Presiding Judge.—The appellant's appeal was submitted to this court upon brief and oral argument on the 23rd day of November, 1927. On the 11th day of January, 1928, a judgment of affirmance was rendered. On the 8th day of February following a motion for rehearing was submitted to this court and argued by counsel, and on the 28th day of June, 1928, the motion for rehearing was overruled. The term of court at which the orders mentioned were made ended on the 30th day of June, 1928. On the 8th day of July, 1928, there was filed with the Clerk an application for permission to file a second motion for rehearing.

The power of the court to entertain the second motion for rehearing or to grant the relief therein sought is a question with which this court is now confronted. The article of the Constitution creating this court states:

"The Court of Criminal Appeals shall sit for the transaction of business from the first Monday in October to the last Saturday in June in each year." (Art. 5, Sec. 5.)

In accord with this provision of the Constitution the court adjourned on the 30th day of June, 1928, which was eight days before the filing of the motion which we are now called upon to consider. A new term of court re-opened on October 1, 1928. By the proceeding in hand, this court is called upon at this subsequent term to annul a judgment rendered and made final by overruling the motion for rehearing at its previous term. It is a general rule that no court of law has the power at a subsequent term to vacate its judgments rendered at a previous term. This is based upon the principle that there must be some period at which the litigation shall cease. On the subject the Supreme Court of this state gave this expression:

"These doctrines are in entire conformity with the principles established in decided cases of the highest authority. In the case *Ex parte* Sibbald v. The United States (12 Peters, 492), it was declared that the supreme court had no power to review their own decisions, whether in a case at law or equity. That no principle was better settled, or of more universal application, than that no court can reverse or annul its own final decrees or judgments for errors of fact or law, after the term in which they have been rendered, unless for clerical mistakes (3 Wheat. 591; 3 Peters, 431); or to reinstate a cause dismissed by mistake (12 Wheat. 10); and that no substantial change or modification could be made affecting the judgment in any material thing. To this rule, as a general one applicable to all courts, bills of review in equity and writs of error *coram nobis* at law were stated to be exceptions. That inferior courts could not vary the decree, or examine it for any other purpose than execution, or give any other or further relief, or review it upon any matter decided on appeal for error apparent, or intermeddle with it further than to settle so much as has been remanded. That after a mandate, no rehearing has ever been granted in the House of Lords (4 Dow. P. C. 157); and, on a subsequent appeal nothing is brought up but the proceeding subsequent to the mandate. (5 Cranch. 316; 7 Wheat. 58, 59; 10 Wheat. 443.)

"In the case of The People *ex relatione* The Attorney General v. The Mayor and Aldermen of the City of New York (25 Wend. 253), an application was made at the next term after the decision, for a rehearing, and the question of the legal and constitutional rights of the court to open and reverse its judgments was fully considered; and it was held that the court had no legal right, or power, to grant a rehearing upon a writ of error after a final judgment has been pronounced upon the merits of the case, and has been regularly

settled and entered of record in the form required by law."
(Chambers v. Hodges, 3 Tex. Rep. 529.)

The principle announced has had the sanction of American and English courts and text-writers. See Freeman on Judgments, 5th Ed., Vol. 1, p. 140; Ruling Case Law, Vol. 15, p. 671, sec. 124.

The Court of Criminal Appeals, like other courts of record, has control of its judgments during the term at which they are rendered, but such power as to final judgments ceases with the end of the term except where by statute the court is authorized to grant, at a subsequent term, a motion for rehearing. There is found in the statutes of this state no provision declaring that the Court of Criminal Appeals may, at a subsequent term, set aside a judgment theretofore rendered. There is such a provision applying to the Supreme Courts and the Courts of Civil Appeals. See Arts. 1762 and 1877, · R. S., 1925. In each of these, the parties are permitted to file a motion for rehearing within fifteen days after the rendition of the judgment, and if the adjournment takes place within less than fifteen days after the judgment is rendered, the motion may nevertheless be filed within the limitation mentioned. By Sec. 25, Art. 5, of the State Constitution, the Supreme Court is given the power to establish rules of procedure not inconsistent with the laws of the state for the government of that and other courts. Pursuant thereto, rules have been made by the Supreme Court governing the Courts of Civil Appeals. See 96 Tex. Rep. pp. 655 to 667. Touching the motion for rehearing the Supreme Court has refrained from making any rules governing the Courts of Civil Appeals, doubtless because of the nature of the matter and for the further reason that the subject was covered by the statute embraced in Art. 1877, supra. Touching the Court of Criminal Appeals, but two rules have been made, one of which reads as follows:

"The rules governing motions, arguments of counsel and applications for certiorari to complete the record as prescribed for the Courts of Civil Appeals shall apply to the Court of Criminal Appeals."

In Art. 849, C. C. P., 1925, it is made the duty of the Clerk of the Court of Criminal Appeals, upon the rendition of a final judgment, to issue the mandate.

From what has been said it is apparent that by no provision of the statute is the Court of Criminal Appeals authorized to entertain a motion for rehearing after the adjournment of the term. It has been the practice to do so, however, in instances in which the first

decision of the court is announced at a time less than fifteen days before adjournment. The practice rests upon very little, if any, legal basis but as a practical matter has much to commend it. The practice, however, has never been extended to authorize the court to consider a so-called "second motion for rehearing" after the adjournment of the term.

In the present instance the power of this court to revise a judgment which became final during the term upon the overruling of the motion for rehearing ceased with the close of the term, and at this time the court possesses no power to change the final judgment entered during the previous term, and having no power to change its judgment or grant the relief prayed for in the application before it, it would be futile to permit the filing of said application. Even if privileged to consider the second motion for rehearing, the court would be constrained to overrule it. It reiterates the contentions that have heretofore been, on full and careful consideration, deemed inadequate to authorize the court to annul the conviction.

The application is denied.

*Denied.*

CONCURRING OPINION ON APPLICATION FOR LEAVE TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—While this court is of opinion, as expressed by its Presiding Judge in connection herewith, that we can not consider an application for leave to file second motion for rehearing, which is filed after adjournment of this court, still in view of the fact that appellant was given the extreme penalty of the law, we desire to say that we have examined his application and that in our opinion it presents nothing which was overlooked by the court in considering the matter originally or upon the motion for rehearing. The four points presented in connection with this application were each and all passed upon by the court. We must adhere to the rule that we will not consider second motions for rehearing even presented during the term, when they only present matters which have already been passed upon.