## LEVI D. DURST V. STATE.

No. 26,862. March 3, 1954.

. . M. *Gabriel Nahas, Jr.,* and *D. B. Mauzy,* Houston, for appellant.

*William H. Scott,* District Attorney, *King C. Haynie,* Assistant District Attorney, Houston, and *Wesley Dice,* State's Attorney, Austin, for the state.

GRAVES, Presiding Judge.

Appellant was charged with the murder with malice of one, Sampson Melvin Ramey, and upon conviction his punishment was assessed at confinement in the state penitentiary for a term of 25 years.

The indictment contains three counts: the first alleging that the killing was done by cutting and stabbing the said Ramey with a knife; the second count alleging that such killing was done by cutting him with a razor; and the third count alleging that said killing was done by cutting him with a sharp instrument, "the exact name and description of which is to the grand jurors unknown."

All of the parties involved were Negroes. The testimony shows that appellant and the deceased had had some difficulty relative to the favors of one, Joyce Mae Greer. Appellant con-

tends that she was his common-law wife and that the deceased was enjoying her company and favors. The killing occurred on the porch of her home located in Houston, Texas.

It is the appellant's contention that the testimony of Joyce Mae Greer was not admissible against him on the claim that she was his common-law wife. However, the uncontradicted testimony shows that she was married to another person, to-wit, J. Alvin Greer, at the time of this trouble.

It seems that there was a great deal of beer drinking on the night of the killing on May 30, 1953, on the porch of the house of Joyce Mae Greer, where she, the appellant and the deceased were assembled. She went into the house, leaving the appellant and the deceased on the porch, where they had some words. Finally, she heard some loud talking. After a few minutes it became quiet, and then she heard some hollering. She went the door and saw that the deceased had been cut. She then ran next door and called an ambulance.

The testimony shows that there was a large amount of blood upon this porch, out in the yard, and for some distance in the yard. The witness saw the deceased lying on the ground with his throat cut, from which he soon died.

A justice of the peace testified that on the arrival of the ambulance at the hospital with the body of the deceased, it was discovered that the throat of the deceased was cut; "that it was about two and one-half inches below the right ear, downward and to the left, across the throat ending up at the collar bone, cut the trachea and artery on this side." The witness testified that he could look in to the vertebrae; that the wound was about five inches long and split open; and that this wound caused the death of the deceased.

There is only one formal bill of exception in the record. The informal bills of exception are neither briefed nor indexed and therefore will not be considered by us.

Bill of Exception No. 1 relates to the argument made by the district attorney to the jury. It is shown by the bill that "after referring to the case on trial as one in which the defendant murdered the deceased, because the deceased had taken his woman away from him," state's counsel made the following statement:

"* * * that is why this county is known as the murder capital of the world."

Appellant immediately objected thereto; whereupon the court instructed the jury in the following language, to-wit:

"The jury will not consider any statement whether this is known as the murder capital or not."

There was no further request made to the court, and the court did nothing further relative thereto except that he admonished state's counsel to stay in the record, and instructed the jury not to consider the argument for any purpose, and, as shown by said bill of exception, the same was not repeated thereafter during the trial.

We do not think that the statement thus made, especially in the light of the state of facts here presented, could have had any influence upon the jury in arriving at their verdict in this cause.

In the case of Tweedle v. State, 29 Tex. App. 586, 16 S.W. 544, in discussing remarks that might doubtless have been improper, this court said:

"The remarks must not only be improper, but they must be of such a nature as would be clearly calculated to prejudice the right of the defendants. To reverse in all cases where counsel fail to confine themselves to the record would render trials farces. There is hardly a case of any importance tried but that during the progress of the trial some unguarded expression is used by counsel upon either side. It would be a remarkable coincidence if this were not true," citing House v. State, 19 Tex. App. 227; Bass v. State, 16 Tex. App. 62.

In the case of Howard v. State, 53 Tex. Cr. R. 378, 111 S.W. 1038, a statement by the prosecuting attorney seems to be to a certain extent much the same as the one herein complained of. In that case the language used was as follows:

"Gentlemen of the jury, the time has come to put a stop to murder in Shelby County. If you turn this defendant loose, it will be a disgrace to your civilization. You should not establish such a precedent in your county. With such a man loose, your lives as citizens are not safe."

In regard to this argument this court said:

"While quite vigorous, we do not think the language used is so incendiary or inflammatory as to be a matter of serious complaint."

In the case of Spencer v. State, 48 Tex. Cr. R. 480, 90 S.W. 638, the holding was to practically the same effect.

It seems to be the general holding that the facts and circumstances surrounding the particular case may be looked to in determining the effect of the argument complained of. The same language under certain circumstances might be highly prejudicial and not so regarded under other circumstances. See Silver v. State, 110 Tex. Cr. R. 512, 8 S.W. (2d) 144; also McKenzie v. State, 111 Tex. Cr. R. 299, 11 S.W. (2d) 172, where it is said that the argument of counsel which transgresses no provision of the law, the propriety of its making and its probable effect are not to be measured alone by the words used, but the facts adduced and the issues involved are potent factors in determining the soundness of the complaint.

All proceedings appearing regular, and finding no reversible error in this cause, the judgment will therefore be affirmed.